ROBERT E. L. COLLIER, Plaintiff in Error, v. JOHN ARCHER.

**Division Two, May 26, 1914.**

CONVEYANCES: Fee: Subject to Be Divested by Condition Subsequent. A conveyance in 1836 of lands in trust for the grantor's wife during her life, the trust to terminate at her death and the lands to become the absolute property of A and B, grandchildren of the grantor, but if they should die without issue, then to C in fee, created, not an estate tail in the two grandchildren, but a fee in them subject to being divested upon the happening of a contingency, i. e., their dying without issue.

Error to Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

AFFIRMED.

*J. M. Rader, Clyde Taylor* and *Guthrie. Gamble & Street* for plaintiff in error.

(1) Upon the execution of this deed, the grandchildren did not take a fee simple. Long v. Timms, 107 Mo. 512. (2) From the fact that this deed in describing the interest of the grandchildren omits words of inheritance, and hence does not create what at common law would be a fee tail, it does not follow that it should be held to convey a fee simple to the

grandchildren, nor that the court should fail to search for the true intent of the grantor and interpret the deed accordingly. R. S. 1909, sec. 583; Chiles v. Bartleson, 21 Mo. 344; Gibson v. Bogy, 28 Mo. 478; Thompson v. Craig, 64 Mo. 312; Bean v. Kenmuir, 86 Mo. 666; Orr v. Rode, 101 Mo. 387; Long v. Timms, 107 Mo. 512; McCullock v. Holmes, 111 Mo. 445; Cornwell v. Wulff, 148 Mo. 542; Walton v. Drumtra, 152 Mo. 489; Speed v. Terminal Ry. Co., 163 Mo. 111; Yocum v. Siler, 164 Mo. 281; Utter v. Sidman, 170 Mo. 284; Chew v. Kellar, 171 Mo. 215; Roth v. Rauschenbusch, 173 Mo. 582; Underwood v. Cave, 176 Mo. 1; Gannon v. Albright, 183 Mo. 238; Williamson et al. v. Brown, 195 Mo. 313; Buxton v. Kroeger, 219 Mo. 224; Gibson v. Gibson, 239 Mo. 490. (3) The grantor intended that the grandchildren should have only a life estate and that at their death it should go to their issue, if they had any. 2 Blackstone, p. 106; 4 Kent, p. 5; 2 Preston on Estates, p. 473; Tiedman on Real Property, secs. 45, 46, 47; R. S. 1909, secs. 2870, 2872, 579; Farrar v. Christy, 24 Mo. 453; Harbison v. Swan, 58 Mo. 147; Thompson v. Craig, 64 Mo. 312; Kinney v. Mathews, 69 Mo. 520; Wood v. Kice, 103 Mo. 329; Cross v. Hoch, 149 Mo. 325; Yocum v. Siler, 160 Mo. 281; Gannon v. Pauk, 183 Mo. 265; Gannon v. Albright, 183 Mo. 238, 200 Mo. 75; Cox v. Jones, 229 Mo. 53; Threlkeld v. Threlkeld, 238 Mo. 459; Gibson v. Gibson, 239 Mo. 490. (4) Valentine had no issue when the deed was executed. The remainder to his children was contingent, and did not vest until his death. Emerson v. Hughes, 110 Mo. 627; Rozier v. Graham, 146 Mo. 352; Buxton v. Kroeger, 219 Mo. 224; Cox v. Jones, 229 Mo. 53; Gray v. Ward, 234 Mo. 291; Brown v. Tuschoff, 235 Mo. 449.

*Simrall & Simrall, Kenneth McC. DeWeese* and *Sandusky & Sandusky* for defendant in error.

(1)   In a deed at common law the word "heirs" was necessary to create a fee simple estate. Tygard v. Hartwell, 204 Mo. 207; 1 Sharswood's Blackstone's Com., p. 107; 1 Jones, Real Prop. (Ed. 1886), sec. 5; 1 Washburn on Real Prop. (3 Ed.), p. 71; 2 Am. & Eng. Ency. Law (2 Ed.), p. 367. This rule was not inflexible in cases of wills. Gannon v. Pauk, 183 Mo. 275.   (2)   As the word "heirs" was necessary at common law in a deed to create a fee, so the words "heirs of the body," or "bodily heirs" was necessary at common law in a deed to create a fee tail. 1 Sharswood's Blackstone's Com., p. 115 (foot p. 477); 1 Washburn on Real Prop. (3 Ed.), pp. 87, 89, 92, secs. 24, 31, 39, 40; 1 Jones, Real Prop. (Ed. 1886), sec. 614; 2 Am. & Eng. Ency. Law (2 Ed.), p. 372; Tygard v. Hartwell, 204 Mo. 207; Yocum v. Siler, 160 Mo. 292; Gannon v. Pauk, 183 Mo. 273.   (3)   It will be observed that this deed does not contain the words "heirs," nor the words "heirs of the body," neither in the grant to Valentine S. P. Collier and Louisia F. Collier, nor in stating the contingency upon which the land should pass to Frances E. Long. The deed did not, therefore, at common law, create either a fee simple or a fee tail estate in Valentine S. P. Collier and Louisia F. Collier, but at common law created in them only a life estate. By our statute (R. S. 1835, p. 119, title "Conveyances," sec. 2) it passed the fee simple title, and the subsequent clause in relation to their "Death without issue" merely marked the contingency upon the happening of which the estate should pass to Frances E. Long. It follows that Sec. 5, R. S. 1835, p. 119, has no application to this case. (4)   The deed in controversy conveyed, by our statute, a fee simple title to Valentine S. P. Collier and Louisia

F. Collier. R. S. 1835, p. 119, title "Conveyances," sec. 2; Tygard v. Hartwell, 204 Mo. 207. And this fee simple estate will not be cut down to a lesser estate by "subsequent ambiguous words, inferential in their intent." Gannon v. Pauk, 200 Mo. 75; Gannon v. Albright, 183 Mo. 239; Yocum v. Siler, 160 Mo. 281; Yocum v. Parker 130 Fed. 722, 134 Fed. 205. As the deed in controversy created a fee simple estate by statute (the statute in this instance plainly giving effect to what the grantor intended by the words "absolute property") the learning in the books as to the technical effect, at common law, of the words "Dying without issue," when used in connection with the word "heirs," does not arise in this case. When section 6, R. S. 1845, p. 220, was passed, there had been no decision in Missouri on the technical effect of the words "dying without issue," in a conveyance of land. This section construed these words, and so anticipated the vexed question, but the section was and is in harmony with the law in Missouri without this section. By all authorities these words were ambiguous. 8 Bush. (Ky.), 636; 6 Ohio St. 563; Yocum v. Siler, 160 Mo. 294; 4 Kent's Com. (12 Ed.), star p. 281, foot p. 301. And being ambiguous, they cannot cut down a prior fee simple estate. R. S. 1835, p. 119, sec. 2.

ROY, C.—This suit was begun in the circuit court of Clay county, and there was a change of venue to the circuit court of Jackson county at Kansas City. The petition is in two counts; the first to quiet title to so much of the north ninety acres of the east half of section eight, township fifty-one, range thirty-one, as lies south and east of the right of way of the Chicago, Milwaukee & St. Paul Railroad, being about sixty acres; the second, in ejectment for the same land. There was a judgment for defendant, and plaintiff has appealed.

Valentine S. Peyton, the common source of title, executed a deed as follows:

"This indenture made and entered into this fifth day of December in the year of our Lord eighteen hundred and thirty six, between Valentine S. Peyton of the county of Clay and State of Missouri, of the one part, and Woodson J. Moss, of the county and State aforesaid of the other part, witnesseth:

"That whereas the said Valentine S. Peyton having realized from the sale of a tract of land, the property of his wife, Elizabeth Peyton, the sum of three thousand seven hundred and sixty-one dollars and seventy-nine cents, is desirous and willing to secure to her some equivalent for the same. Now, therefore, in consideration of the premises aforesaid and with the view of providing for the support and maintenance of his said wife, and in consideration of the natural love and affection which he, the said Valentine S. Peyton, has for his grandchildren, Valentine Smallwood Peyton Collier and Louisia Francis Collier, being the children of his daughter Nancy McClanahan Collier, formerly Nancy McClanahan Peyton of Nicholas county, Kentucky, the said Valentine S. Peyton has granted, bargained, sold and set over and by these presents doth grant, bargain, sell and set over unto the said Woodson J. Moss, all that certain piece or parcel of land situate, lying and being in the county of Clay and State of Missouri aforesaid, to-wit: The north half of the tract whereon we now live to begin at the northwest corner of said tract, thence south on the west line thereof so far as by running the dividing line due east to the east line, thence with that line north to the northeast corner of said tract, and thence west to the beginning to contain one hundred and thirty-five acres. And also three certain slaves for life, to-wit: Henry, Jenny and Sarah.

"To have and to hold, receive and take the same to him the said Woodson J. Moss, his heirs and assigns, to the only proper use and behoof of him the said Woodson J. Moss, his heirs and assigns, forever.

"In trust, however, and to the intent and purpose that he, the said Wodson J. Moss shall and will employ and appropriate or cause to be employed and appropriated for the use and benefit of the said Elizabeth Peyton during her natural life all the rents, hire and profits of the said land and negroes allowing the said Elizabeth Peyton the personal occupation of the said land and the possession and use of the said negroes whensoever and as long as she may choose. And the said Woodson J. Moss is hereby authorized to sell at such time and on such terms as he may think best, all or any of said negroes and to put the money arising from such sale or sales to interest or pay over the same with the interest which may have accrued thereon, or the interest only, at his discretion, to the said Elizabeth Peyton, without security for its return in any event; and this conveyance is upon this further condition, to-wit: That at the death of the said Elizabeth Peyton, said conveyance to the said Woodson J. Moss, his heirs and assigns, shall be null and void and the trust aforesaid shall cease, and the said land and one-half of the said negroes and their increase remaining unsold and one-half of the money unexpended arising from the sale of such negroes as may have been sold to revert and be the absolute property of the said Valentine Smallwood Peyton Collier and Louisia Francis Collier, said infant children of the said Nancy McClanahan Collier, and the other half of said negroes and their increase so remaining unsold and the one-half of the money unexpended arising as aforesaid to revert to and become the absolute property of my daughter, Francis Elizabeth Long, and her heirs and assigns, and in case of the death of the said Valentine Smallwood Peyton Collier and Louisia Francis Col-

lier, infant children of the said Nancy McClanahan Collier without issue, them the said land above described and negroes and their proceeds, if sold, to revert to and to be the absolute property of my said daughter Francis Elizabeth Long, her heirs and assigns, forever, and in case of the death of the said Francis Elizabeth Long without issue, then the whole of the above-described negroes and their proceeds if sold, to revert and be the absolute property of the said Valentine Smallwood Peyton Collier and Louisia Francis Collier, forever.

"In testimony whereof, I have hereto subscribed my name and affixed my seal the day and year aforesaid.

"(Seal.)        VAL. S. PEYTON.      (Seal)."

That deed included the land in controversy. It was properly acknowledged and filed for record December 8, 1836.

Louisia Francis Collier died while a minor, single and unmarried, in 1838.

On August 28, 1852, Valentine S. P. Collier conveyed the 135 acres of land by general warranty deed to Garrard Long, the husband of Francis Elizabeth Long mentioned in the first deed, in consideration of $2000. Elizabeth Peyton, the widow of Valentine S. Peyton, grantor in the first deed, died August 6, 1862. Valentine S. P. Collier died in 1905, leaving Robert E. L. Collier, his eldest son, plaintiff in this case, also Thomas J. Collier, a son, Fannie Kent and Dwane Kent, grandchildren by a deceased daughter, Nannie, and Charles Bradford and Collier Bradford by a deceased daughter Laura. Defendant has acquired the title which was conveyed to Garrard Long by Valentine S. P. Collier.

Plaintiff in error contends that the deed from Valentine S. Peyton created what would have been an estate tail at common law in his two grandchildren

**Fee Simple: Condition: Subsequent: Estates Tail.** named therein. It must be frankly conceded that Farrar v. Christy, 24 Mo. 453, and McCullock v. Holmes, 111 Mo. 445, and Harbison v. Swan, 58 Mo. 147, are direct authority for that proposition.

In Yocum v. Siler, 160 Mo. 281, the language of the instrument was the same as here, and it was held that the will devised a fee, subject to being divested on the happening of a contingency, i. e., the dying without issue. In that case there was issue, and it was held that the fee became absolute.

In Gannon v. Albright, 183 Mo. 238, the instrument was in effect the same as in this case on the issue involved. A divided court of four to three said:

"By the said fourth clause of the will the said two sons took a fee simple subject to be defeated upon their dying without issue living at their death, and as both died leaving children, the plaintiffs herein, the contingency upon which their fee simple was to be defeated never happened and never can happen, and their estate in fee became absolute, and their warranty deeds conveyed to defendants' grantors the fee simple title. A different conclusion was reached in the construction of this same clause in the will of Michael J. Gannon by Division One of this court in Edward Gannon et al. v. Gustave Pauk et al. at the October term of this court, 183 Mo. 265, but upon reconsideration of the said clause in this case by the Court in Banc, we are not satisfied with the opinion of Division One construing said clause, and must decline to accept it as the proper construction of this will, and the judgment of the circuit court must be and is reversed."

That conclusion was endorsed by a divided court in Gannon v. Pauk, 200 Mo. 75.

There is no reason why anyone should attempt to add to the store of learning embodied in those opinions. We shall not attempt to do so. It is suffi-

cient for us to say that the question was therein set-
tled and settled right.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy,
C., is adopted as the opinion of the court. All the
judges concur.