## ANABEL WELCH v. JAMES HARVEY et al.; CYRUS FINLEY et al., Appellants.

### In Banc, April 1, 1920.

1. **DEED: Construction: The Whole Instrument: Granting Clause: Habendum.** In construing a deed, the intention of the parties, as gathered from the entire instrument, together with the surrounding circumstances, are to be ascertained and given effect, unless in conflict with some positive rule of law or repugnant to the terms of the grant itself; and in gathering such intention from the instrument, the court will ignore technical distinctions between the various parts and seek the grantor's intention from them all, without undue preference to any, giving due effect to all, even to the extent of allowing the *habendum* clause to qualify or control the granting clause where it is manifest that the former, in connection with the whole, more nearly expresses the grantor's intention.

2. ——: ——: ——: ——: **Parenthetical Clause.** The deed made in 1867 recited that the grantors, "in consideration of the regard and affection we have for our daughter Fannie E. Finley and of the payment of eight hundred dollars by William Finley," do "hereby convey and sell to said Fannie and William two hundred and fifty acres......most eastern fifty acres is the land sold to William Finley the other two hundred acres we give to

Fannie." *Held*, that the granting clause is a clear and unambiguous conveyance to Fannie and William, and is not limited by the last parenthetical words, which are of doubtful and uncertain meaning and application.

*Held*, by WILLIAMSON, J., dissenting, with whom BLAIR and GOODE, JJ., concur, that if an estate by the entirety had been intended the intention would have been expressed in some other words than the mere granting clause, and that the instrument as a whole declared an express purpose of a sale of fifty acres to William and a gift of two hundred to Fannie, and that purpose is strengthened by the order in which the grantees are named, in that the granting clause says that the grantors "convey and sell to Fannie and William," which in effect means that they convey to Fannie and sell to William.

3. ———: ———: ———: ———: ———: **No Several Tract: Husband and Wife: Change in Law.** That the clear words of the granting clause were not restricted by the ambiguous subsequent clause is reinforced by two other facts: *first*, the deed contains no word or phrase indicating that the grantors intended to convey in severalty to their daughter and her husband distinct parcels; and, *second*, at the time the deed was made (1867) the notion of unity of property and person of husband and wife was firmly fixed in the popular mind and in the law, and it was not unusual for a father, when he gave real estate as an advancement to a daughter, to deed it to both.

*Held*, by WILLIAMSON, J., with whom BLAIR and GOODE, JJ., concur, that a gift, by deed, to the daughter alone, had no tendency to divert the title from the descendants of the grantors, and to construe the deed in judgment as a conveyance of an estate by the entirety to the grantors' daughter and her husband, and the vesting of the title first in him by her death and then in his collateral kindred upon his death is to vest the title in strangers to the grantors' blood, which is a result in no wise contemplated by the terms used in the deed.

4. ———: ———: **The Word Sold.** The word "sold," unaccompanied by others of apter significance, is not ordinarily a word of conveyance, but will be so considered in a proper setting, or where clearly so intended.

*Held*, by WILLIAMSON, J., with whom BLAIR and GOODE, JJ., concur, that the natural order of the words in a conveyance, and the usual sequence of events, is "sell and convey," and not "convey and sell;" and this reversal of the order in a deed by parents to a daughter and her husband, by which they "convey and sell to Fannie and William," is of significance, for there, the deed expressing as its consideration regard and affection for the daughter and a payment of $800 by

her husband, the meaning is that they conveyed to the daughter (the two hundred acres subsequently mentioned in the deed) and sold to him (the fifty acres mentioned therein).

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

REVERSED.

*Sutton & Huston* and *J. W. Powell* for appellants.

(1) Both the statute law and the decisions conclusively establish that this conveyance created an estate by the entirety in William Finley and Fannie Finley, his wife. Gibson v. Zimmermann, 12 Mo. 386; Garner v. Jones, 52 Mo. 68; Modrell v. Riddle, 82 Mo. 31; Edmondson v. City of Moberly, 98 Mo. 523; Bains v. Bullock, 129 Mo. 117; Hume v. Hopkins, 140 Mo. 65; Wilson v. Frost, 186 Mo. 311; Moss v. Ardery, 260 Mo. 595; R. S. 1909, sec. 2878; Steifel Union Brewing Co. v. Saxy, 273 Mo. 171; Ashbaugh v. Ashbaugh, 273 Mo. 357. (2) Counsel insist that the intention to convey separate estates is shown by the use of the words "convey and sell" as used in the granting clause. We contend that it would be just as reasonable to contend that five separate estates were conveyed, had the scrivener used the words, "grant, bargain and sell, convey and confirm," as is commonly used now. Garner v. Jones, 52 Mo. 68. When the entire deed is taken into consideration, it is quite evident that the grantor did not intend that this expression should in any way affect the conveyance, but that the purpose of inserting this expression in the deed was to show his other heirs how much of this conveyance to William and his wife was an advancement, and for how much of the property conveyed, cash was paid. (3) It is no unusual thing for parents to convey property to their daughter and son-in-law and inject into the deed of conveyance such statements and expressions as appear in this deed, and still intend to convey an estate by the entirety. Garner

·v. Jones, 52 Mo. 68. (4) Whenever a doubt arises as to whether or not a conveyance to a man and wife creates an estate by the entirety or some other interest, the courts, whenever it is possible, construe the deed in such a manner as to convey an estate by the entirety. Wilson v. Frost, 186 Mo. 311; Garrett v. Wiltse, 252 Mo. 712; Ashbaugh v. Ashbaugh, 273 Mo. 358. (5) It is a well-established rule both at common law and under modern decisions that if two clauses of a deed are so repugnant that they cannot stand together, the first clause will be sustained and the latter rejected. Webb v. Webb, 29 Ala. 588; Petty v. Boothe, 19 Ala. 633; Gould v. Womack, 2 Ala. 83; Tubbs v. Gatewood, 26 Ark. 128; Doe v. Porter, 3 Ark. 18; Havens v. Dale, 18 Cal. 359; Daniel v. Veal, 32 Ga. 589; Cutler v. Tufts, 3 Pick 272; Blackwell v. Blackwell, 124 N. C. 269; Pike v. Munroe, 36 Me. 309. And whatever is expressly granted cannot be diminished by subsequent restrictions. Pike v. Munroe, 36 Me. 309. And subsequent clauses of doubtful import will not be so construed as to contradict preceding clauses. Perry v. Boothe, 19 Ala. 633. And doubtful words inserted after words of a grant will not qualify a conveyance. Ex Parte Durfee, 14 R. I. 47; Miller v. Tunica Co., 67 Miss. 651. It is also very generally held that even the habendum clause of a deed, though it may materially restrain, lessen, enlarge, explain, vary or qualify, may not contradict or be repugnant to the estate granted by the granting clause of the deed. 2 Blackstone's Commentaries, 298; Haffner v. Irwin, 20 N. C. 433; Mowry v. Bradley, 11 R. I. 370; Donnan v. Intelligencer etc. Co., 70 Mo. 174; Halifax Cong Soc. v. Stark, 34 Vt. 243; Edwards v. Beall, 75 Ind. 401; Adams v. Dunklee, 19 Vt. 382; Welch v. Welch, 183 Ill. 257; Green v. Sutton, 50 Mo. 192.

*Avery & Killam* for respondent.

(1) Fannie having preceded William in death, the 50 acres belonged to William absolutely, and there is no estate in entirety, in either the one or the other, but the

collateral heirs of William are entitled to the 50 acres because of Fannie's death before his, and the 200 acres that was given to Fannie belonged absolutely to Fannie, and under the statute he, having outlived Fannie, owned one-half and his collateral heirs are entitled to that one-half, and the collateral heirs of Fannie are entitled to the remaining one-half. (2) Mr. and Mrs. Reid owned the land. Mrs. Finley was the daughter. The mother and father wanted to convey this land to her, that is, 200 acres of it. There was a tract of 250 acres. The son-in-law was willing to buy the 50 acres, the most eastern part of the 250 acre tract. He did buy it and he paid an adequate consideration $800. Then they wanted to give to her, Fannie, not William, 200 acres of land. The Reids conveyed the whole 250 acre tract, conveyed all of the 250 acres to Fannie and William, but they conveyed it in separate tracts; they conveyed 50 acres to William, which he bought, and they gave 200 acres to their daughter, Fannie. Buxton v. Kroeger, 219 Mo. 221. (3) It is a cardinal rule for the interpretation of contracts, that the intention of the parties shall be effectuated. Roseberry v. Benevolent Assn., 142 Mo. 552; Arnett v. Williams, 226 Mo. 109; St. Louis v. Railroad, 228 Mo. 712; Walsh v. Woodmen, 148 Mo. App. 179; Webb v. Ins. Co., 134 Mo. App. 576. The court will not give a contract such a construction as will permit one party to secure an unreasonable advantage over the other party unless compelled to do so by the language of the contract. Lead Co. v. Ins. Co., 162 Mo. App. 332.

RAGLAND, C.—This suit was instituted in the Circuit Court of Lincoln County by the plaintiff as one of the collateral heirs of Fannie E. Finley, deceased, against the remaining heirs of said deceased and the collateral heirs of William Finley, deceased, for the partition of certain lands in said county. The defendant heirs of Fannie E. Finley filed no answer; the heirs of William Finley answered, denying that the plaintiff and their codefendants, heirs of Fannie E. Finley, had any right, title or interest in the lands sought to be partitioned,

claiming that they as heirs of William Finley were the sole owners thereof in fee simple, and praying the court to so adjudge.

The facts are brief. William Finley and Fannie E. Finley were husband and wife on the 28th day of August, 1867, and continued so to be until the death of Fannie, which occurred about the year 1909; William died January, 1916. They left no descendants. Appellants are the collateral heirs of William, and respondent and the remaining defendants are the collateral heirs of Fannie. Fannie E. Finley was a daughter of James and Lucy Reid, who on the 28th day of August, 1867, executed the following deed:

"Know ye all persons whom a knowledge of this transaction may, concern that we James Reid Sen. and Lucy, his wife, of the County of Lincoln and State of Missouri, do by these presents for and in consideration of the regard and affection we have for our daughter Fannie E. Finley and of the payment of eight hundred dollars lawful money of the United States well and truly paid, by William Finley of the County of Lincoln and State of Missouri, the receipt of which is hereby acknowledged hereby convey and sell to said Fannie & William the following described tract of land containing two hundred and fifty acres eighty-five acres described as the land we bought of the widow and heirs of James Downing deceased the remaining one hundred and sixty-five acres described as follows. Begin at a stone corner of D. H. Whitesides. Then with the northern line of said Whitesides south sixty-eight degrees west sixteen chains and twenty-five links to corner in the spring branch. Then north twenty-one and half degrees west with the northeast line of the Downing tract of land twenty-seven chains and sixty-five links to the northeast corner of said land on the line of S. Weeks. Then with said line north sixty-eight degrees east thirty-one chains and twenty-five links to corner of said Weeks. Then north twenty-one and a half degrees west one chain and eighty links to a stone corner of James Willson. Then north sixty-eight degrees east fifteen chains and thirty

44—281 Mo.

links and set a stone for corner from which a white oak twelve inches bears south forty-nine degrees east twenty-nine links distant. Then south twenty-one and a half degrees east forty-seven chains and set a stone for corner from which a white oak twenty inches bears north ten and a half degrees east twenty-two links distant. Then south eighty and a half degrees west ten chains and fifty-nine links to a corner of D. H. Whitesides with a buck-eye bearing tree. Then north seventy-nine degrees west twenty-three chains and sixty-eight links and set a stone from which a white oak eighteen inches bears south eighty degrees east thirty links. Then north twenty-one and a half degrees west two chains and fifty-five links to the place of beginning containing in all two hundred and fifty acres most eastern fifty acres is the land sold to William Finley the other two hundred acres we give to Fannie reserving to ourselves the right of way through said tract of land where said way may be least prejudicial to the same to a tract of we own and joining to and east of it all of which land is in and part of Survey eighteen hundred and thirteen or as some number it eighteen hundred and nineteen a grant of four thousand arpens to Peter Jamin situate in Township No. fifty-one and range one east and one west to the said Fannie and William with all and singular the appurtenances to the same belonging free and clear of all legal incumbrances whatsoever. In Testimony of which we hereunto set our hands and affix our seals this twenty-eighth day of August eighteen hundred and sixty-seven.

> "JAMES REID SR.     (Seal)
> "LUCY REID          (Seal)."

It is respondent's contention that the foregoing instrument conveyed severally to William Finley the most eastern fifty acres of the land therein described and to Fannie E. Finley the remaining two hundred acres. It is this two hundred acres that she seeks to have partitioned. If her contention is sound, it follows that upon the death of Fannie without descendants her husband, William, under the statute, became vested with the title to an undivided one-half interest in the land and the

remaining one-half descended to her heirs, and later upon the death of William his one-half descended to his heirs. The appellants, on the contrary, insist that the deed to Fannie and William conveyed the whole tract of two hundred and fifty acres to the two of them, whereby they became vested with an estate by the entirety in the whole, and that the death of Fannie left her husband, William, the sole owner in fee.

The trial court first found for appellants and rendered judgment accordingly. Later, deeming its conclusion erroneous, it sustained a motion for a new trial. This appeal is from that order. It is apparent that the proper construction of the deed is the only matter for our determination.

Whether the deed conveys the entire tract of land to both grantees, or whether it conveys to each of them severally a separate portion thereof, must be ascertained from the four corners of the instrument itself. For the rule has long obtained in this State, that, in construing a deed, the intention of the parties, as gathered from the entire instrument, together with the surrounding circumstances, shall be ascertained and given effect, unless in conflict with some positive rule of law, or repugnant to the terms of the grant itself, and that in gathering such intention from the instrument the court will ignore technical distinctions between the various parts and seek the grantor's intention from them all, without undue preference to any, giving due effect to all, even to the extent of allowing the *habendum* clause to qualify or control the granting clause where it is manifest that the former, in connection with the whole, more nearly expresses the grantor's intention. [Tennison v. Walker, 190 S. W. 9; Adams v. Highland Cemetery Co., 192 S. W. 944.]

Omitting the long descriptions of the land conveyed and of the right of way reserved, the deed under consideration is as follows:

"Know ye all persons whom a knowledge of this transaction may concern that we James Reid Sen. and Lucy, his wife, of the County of Lincoln and State of

Missouri, do by these presents for and in consideration of the regard and affection we have for our daughter Fannie E. Finley and of the payment of Eight Hundred Dollars lawful money of the United States well and truly paid, by William Finley of the County of Lincoln and State of Missouri, the receipt of which is hereby acknowledged hereby convey and sell to said Fannie & William the following described tract of land containing two hundred and fifty acres . . . *most eastern fifty acres is the land sold to William Finley the other two hundred acres we give to Fannie* reserving to ourselves the right of way through said tract of land. . . . to the said Fannie and William with all and singular the appurtenances to the same belonging free and clear of all legal incumbrances whatsoever.

"In Testimony Whereof etc. this 28th day of August, 1867."

If the words which we have italicized were omitted there would be no possible basis for construction, for the plain import of the language would questionably show a conveyance to both Fannie and William of the entire tract of two hundred and fifty acres, hence if there is an uncertainty as to whether the grantors intended to convey fifty acres to William and two hundred to Fannie, or whether they intended to convey the entire tract of two hundred and fifty acres to both Fannie and William, it arises solely from the use of the words, "most eastern fifty acres is the land sold to William Finley the other two hundred acres we give to Fannie," between the description of the land granted and the exception therefrom reserved to the grantors. Necessarily the uncertainty thus created, if any, is whether the words last quoted were intended by the grantors to limit, or qualify, or explain the language of the granting clause. That clause is: "We . . . do by these presents . . . hereby convey and sell to Fannie and William the following described tract of land containing two hundred and fifty acres." It is so clear, unambiguous and positive in its declaration that the grantors convey the en-

tire tract to both Fannie and William that any idea of
explanation is not to be considered.   The only ques-
tion, therefore, is whether the force of this direct and
unequivocal language is in any way restrained or quali-
fied by the language immediately following it.   Having
that point in mind, the first thing to suggest itself in read-
ing the possible qualifying clause in connection with the
context, is that there are no introductory or connecting
words that indicate in any way that it was intended to
limit or make more specific the general language of the
granting clause.   For example, the grantors do not say,
''We convey to Fannie and William two hundred and fifty
acres, *that is,* to William the most eastern fifty acres
which we sold to him and to Fannie the remaining two
hundred acres which we gave her.''   Nor are there any
words of similar import used.   From the standpoint of
grammatical construction the recital is purely parenthet-
ical. Notwithstanding the form of construction, however,
if the words on their face carry a meaning inconsistent
with the unrestrained meaning of the general terms of
the granting clause, they should be given effect, if pos-
sible.   But do they?   The expression ''most eastern fifty
acres is the land sold to William'' as used by the grant-
ors, does not in the face of the positive language to the
contrary afford the slightest implication that they were
for that reason conveying that fifty to him alone.   Nor
does the remainder of the expression, ''the other two
hundred acres we give to Fannie'' used in the same con-
nection furnish a basis for an inference that they were
conveying the two hundred acres to her alone.   That fifty
acres had been sold to William and two hundred given to
Fannie is entirely consistent with a present conveyance
of the whole to both.   The word ''sold'' unaccompanied
by words of apter significance, is not ordinarily used as
an operative word of conveyance;   it may be, however,
and will be so considered in a proper setting, or where
clearly so intended.   But to construe the verb, ''is  .  .  .
sold,'' where it occurs in the clause, ''most eastern fifty
acres is the land sold to William,'' as relating back to,

or as used in the same sense as, the operative words of conveyance, "convey and sell," in the granting clause, is a purely arbitrary construction. Neither the thought nor the structure of the context warrant it. Had the concluding part of the clause been, "is the land *hereby* sold," it would plainly show by relation a conveyance of that particular land to William Finley. But the only obvious omission between the words "land" and "sold" is that of the words "that was." If they were supplied, it would make the clause grammatically complete and it would read, "most eastern fifty acres is the land that was sold to William Finley," and we may not arbitrarily insert "hereby" or any similar word not necessarily implied by the context, for to do so would be to make a deed that the grantor did not. What is true of the first part of the recital is necessarily true of its antithetical part, "the remaining two hundred acres we give to Fannie."

The recital is not only parenthetical in structure, but, considered in respect to the thought it conveys in connection with that expressed by the language which precedes and follows it, it seems to be a mental "aside" as well. After stating that they convey to both Fannie and William all of the land, which they describe at length, they incidentally remark, as it were, "most eastern fifty acres is the land sold William Finley the other two hundred acres we give to Fannie." The circumstances of the parties considered it is more than probable that the grantors intended by the recital to amplify their previous statement of the consideration. They were giving their daughter a certain two hundred acres of land as an advancement, her husband had bought fifty acres adjoining for eight hundred dollars, and, for purposes of their own, they desired the deed to recite the entire transaction, and thereby disclose the motives that actuated them in making the conveyance. Had their thought been fully expressed it would no doubt have been somewhat as follows: "most eastern fifty acres is the land sold to William Finley the remaining two hundred acres we give

to Fannie'' as an advancement, and for that reason we
now convey the whole to both, they being husband and
wife.  But whether this is the correct interpretation of
the parenthetical clause or not, the fact remains that the
granting clause is clear and unambiguous and because it
is unambiguous it cannot be restrained or controlled by
the language of a recital following it that is of doubtful
and uncertain meaning or application.  This is especially
true where, as in this instrument, the granting clause is
in entire harmony with and supported by the *habendum*
clause, if the last clause in this deed may be so designated.

We are further confirmed in the view that the recital
is but an amplification of the consideration clause by
the fact that there is not in the entire instrument, outside
of the recital, a single word or phrase indicating that the
grantors were intending to convey severally to the gran-
tees distinct parcels of the land.  It is difficult to conceive
how the scrivenor, whether he was skilled or unskilled,
could have written the remainder of the instrument and
never used a word that even hinted at a several convey-
ance of the two.

Considered independently of the language of the deed
itself, there is no presumption that the father in giving
his daughter the land in controversy intended to convey
it to her alone rather than to her and her husband. At the
time it was made the ideas of ''mine'' and ''thine'' as be-
tween husband and wife were not so sharply accentuated
as at the present time.  The notion of the unity of the
property, as well as of the persons, of husband and wife
was firmly fixed in the popular mind as it was in the law.
It was not unusual for a father when he gave his married
daughter personal property as an advancement to deliver
it direct to her husband, and when he gave real estate, to
deed it to both.  In the exceptional case he conveyed it
to her sole and separate use.

For the reasons hereinbefore expressed, we deem the
conclusion first reached by the learned trial court to be
the correct one.  Its order granting a new trial is, there-

fore, reversed and it is directed to reinstate the judgment set aside. *Brown* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAG-LAND, C., after reargument in Court in Banc, is adopted as the decision of the court. All the judges concur, except *Williamson, Blair* and *Goode, JJ.,* who dissent, and express their views in an opinion by WILLIAMSON, J.

WILLIAMSON, J. (dissenting).—The conclusion reached in the majority opinion seems to me to be in violation of the intention of the grantors in the deed under consideration. This deed, in reality, is simply two deeds in one. Had it been so in fact, no suggestion of the creation of an estate by the entirety would be tenable for a moment. No intimation of the existence of the relation of husband and wife between the grantees is contained in the deed. The consideration is plainly, stated as the *"regard and affection we have for our daughter Fannie"* and *"eight hundred dollars"* from *"William Finley."* There is evidence that the fifty acres was worth about that sum. The grantors are at pains to say that *"fifty acres is the land sold to William Finley,"* and *"two hundred acres we give to Fannie."* This deed was the product of an unskilled hand. The writer obviously had about such knowledge as may be derived from an occasional reading of a printed form, and it is hardly to be inferred that even a blank form was before him when he wrote this inartificial conveyance. Such a writer is apt to use such technical terms as he may recall at the moment, in order to give an air of legal knowledge to the document, but he usually has little realization of the significance of the words he employs. To him they are mere matters of form. When he intends, however, to express the controlling thought he has in mind, he naturally drops into the vernacular of the home and the fireside. Hence the blunt declaration of a *sale* to William and a *gift* to Fannie. Had an estate by the entirety been meant, no

draftsmen, skilled or unskilled, would have been apt wholly to fail to give any clue to that intention. If skilled in the conveyancer's art, he might have contented himself with a recital that the grantees were husband and wife; if unskilled, his meaning would probably have been set forth with the same bluntness shown when he distinguished between a gift and a sale. Even the order in which the words "convey and sell to Fannie and William" are used is significant. Fannie is named first. To her the grantors "convey." William is then named. and to him the grantors "sell." Here was no sale to the daughter nor any gift to him whose relationship to the grantors in any degree, by blood or marriage, is recognized nowhere in the deed. The natural order of use of these words is "sell and convey." That is the usual sequence of events. The inverted form here used, "convey and sell," is alive with meaning when the order in which the grantees are named is considered. Furthermore, a gift to the daughter alone had no tendency to divert the title from the descendants of the grantors. A conveyance to the husband and wife as such (as this conveyance is held to be in the majority opinion) makes possible what has actually happened, namely, the vesting of the title in strangers to the grantor's blood. Nothing in this deed seems to me to foreshadow such an intent. *Blair* and *Goode, JJ.,* concur.