MARY L. LONG, DANIEL R. LONG and LILLIAN LONG, Minors, by their Guardian, MARY L. LONG, Appellants, v. ST. LOUIS UNION TRUST COMPANY, a Corporation, and the CURATORS OF CENTRAL COLLEGE, a Corporation.—57 S. W. (2d) 1071.

Division Two, March 3, 1933.

*R. M. Nichols* for appellants.

*Wilfley, Williams & Nelson* for respondents.

COOLEY, C.—This case comes to the writer on reassignment. It is an action to determine title to certain real estate in the city of St. Louis. The decision depends upon the construction of the following deed:

"This Indenture, made this Ninth day of June, A. D., 1909, by and between Edward Unwin, single, of the City of St. Louis, State of Missouri, as party of the First Part, and Martrom D. Lewis, Mary Margaret Lewis, the St. Louis Union Trust Company and Central College located at Fayette, Missouri, as parties of the Second Part,

"Witnesseth: That the said party of the First Part, in consideration of the sum of One Dollar to him in hand paid, and other good and valuable considerations, the receipt whereof is hereby acknowledged, does by these presents Give, Grant, Alien, Convey and Confirm unto the said parties of the Second part all the right, title and interest of the said party of the First Part in and to then (the) property hereinafter described, in the proportions and upon the limitations and conditions, however, hereinafter expressed.

"The estate herein and hereby conveyed to the said Martrom D. Lewis, one of the said parties of the Second Part, is a full and complete life estate in and to the said property during the natural life of the said Martrom D. Lewis, with full power in him to possess, use, occupy and enjoy all and singular the said property and estate during

and until the full end and term of his natural life, with the right during his said natural life to take and possess himself of all and singular the rents, issues and profits arising therefrom, and from every part thereof; and he shall have the right and full power to incumber the fee of the said property and estate with lease or leases the term or terms of which may extend beyond the natural life of the said Martrom D. Lewis, and which lease or leases may contain such agreements, covenants and conditions as may be deemed meet and proper by the said Martrom D. Lewis, and the lessee or lessees of said property, or of any part thereof.

"The said rents, issues and profits of the said lease or leases, and said leasehold estates, however, after the death of the said Martrom D. Lewis, shall follow the remainder or remainders of said property, upon the same conditions, limitations and covenants herein expressed as limiting the same.

"The said remainder in fee of said property subject to the said reservations, conditions and limitations hereby created, and upon which said remainder in fee is hereby conveyed and intended to be conveyed to the said Mary Margaret Lewis, one of the said parties of the Second Part is the full remainder in fee, after the determination of the life estate of the said Martrom D. Lewis, of, in and to the following described real estate, situated in the City of St. Louis, in the State of Missouri, particularly described and bounded as follows, to-wit: (here follows description of real estate conveyed).

"Subject to defeasance, however, in the event the said Margaret Lewis shall die before being married, or if she shall marry, die without leaving any children her surviving.

"To Have and To Hold the said remainder in fee, as aforesaid, together with all the rights, privileges, appurtenances and immunities thereunto belonging or in anywise appertaining, subject to the said life estate of the said Martrom D. Lewis and his power to encumber the fee of said property by lease or leases, as hereinbefore provided, to the said Mary Margaret Lewis; but upon the following conditions and limitations: If she shall have a child or children, then the said remainder in fee shall vest in her and said child or children in equal shares, share and share alike absolutely and in fee simple forever. But if she shall die before marriage, or without leaving any child or children, her surviving, then she shall enjoy the said estate during her natural life only and after the determination of the life estate in said property of said Martrom D. Lewis, and upon her death the remainder in fee simple absolute to said property, including the lessor's rights in any lease or leases with which said Martrom D. Lewis shall have encumbered the fee of said property for a term or terms continuing beyond the death of the said Martrom D. Lewis and Mary Margaret Lewis, shall pass to and vest in the St. Louis Union Trust Company of the City of St. Louis, Missouri, absolutely; but subject

to the following conditions and limitations as to said St. Louis Union Trust Company, and with the powers and duties hereinafter prescribed for it:

"As soon as practicable after the death of both the said Martrom D. Lewis and Mary Margaret Lewis, in the event the latter shall have died without having been married, or having married shall die without leaving any child or children surviving her, said St. Louis Union Trust Company shall sell the property above described in fee simple absolute, including any lessor's rights existing therein or against the same on account of a lease or leases made by the said Martrom D. Lewis, and pay the proceeds of the sale thereof to Central College, located at Fayette, Missouri, upon the condition and requirement that the said Central College shall place the amount thereof on the Treasurer's books of said College to the credit and as a part of the permanent endowment of said College, and more particularly and especially of the Martrom D. Lewis Memorial Fund; the income from which shall be used in aiding worthy young men, who will equip themselves to enter the Methodist Ministry, in obtaining an education, thus qualifying themselves for good service in their Lord and Master's Vineyard; but the principal of which said memorial fund shall be kept intact and be invested and reinvested by the proper authorities of said College, so as to yield income which can be used in the education of worthy young men as above provided.

"The investment and reinvestment of the principal of said fund to be in safe secure conservative investments, so as to run as little danger as practicable of impairing or losing the principal of said fund; safety of the investment to be regarded more than the amount of income.

"In Witness Whereof, the party of the First Part has hereunto set his hand, on this the day and date in this instrument first above written.

"(Signed EDWARD UNWIN."

The deed was duly acknowledged by the grantor, Edward Unwin, and recorded on the day of its date, June 9, 1909. Aside from the deed, which was introduced, the only evidence in the case was the testimony of plaintiff, Mary L. Long, in substance as follows: That she is the Mary Margaret Lewis named as grantee in the deed, having been about eighteen years old and unmarried when it was made; that Martrom D. Lewis was her father and that he died May 23, 1910; that she married Daniel R. Long and at the date of the trial in February, 1929, had two children, her coplaintiffs, Lillian, born January 19, 1912, and Daniel, born February 2, 1913, for both of whom she was guardian; and that her father had been an active member of the Southern Methodist Episcopal Church taking great interest "in the church and its institutions." The facts are undisputed.

The court determined and adjudged the title to said real estate to be vested as follows:

"That said Mary L. Long holds and owns the same in fee simple, subject however, to defeasance if she shall not leave any issue surviving her, and that, in the event that said Mary L. Long leaves no issue surviving her, then, at her death, the fee simple title to said land will shift to and vest in said St. Louis Union Trust Company, in trust as aforesaid for the defendants, the curators, of the Central College."

We think the learned chancellor correctly construed the deed in question. It is conceded to be settled in this State that the cardinal rule to be observed in the construction of deeds, as of wills, is to ascertain the intention of the grantor and then to give effect to such intention if practicable and not in conflict with some positive rule of law, and in ascertaining such intention all the provisions of the deed are to be considered. [Walton v. Drumtra, 152 Mo. 489, 497, 54 S. W. 233; Eckle v. Ryland, 256 Mo. 424, 441, 165 S. W. 1035; Welch v. Finley, 281 Mo. 684, 219 S. W. 897; McAlister v. Pritchard, 287 Mo. 494, 230 S. W. 66.] In gathering the intention from the instrument technical distinctions between the various parts may be ignored and the grantor's intention sought from all parts of the instrument without undue preference to any, Welch v. Finley, supra. And the instrument is to be so construed, if possible, as to give it effect and to carry out the maker's intention. [McAlister v. Pritchard, supra.] With these well established rules in mind we look to the deed in this case to discover the grantor's meaning and intention as therein expressed.

The grantor first designates Martrom D. Lewis, Mary Margaret Lewis, St. Louis Union Trust Company and Central College as parties of the second part and then proceeds to "give, grant, alien, convey and confirm unto the said *parties of the second part*" the property "in the proportions and *upon the limitations and conditions,* however, hereinafter expressed." He then specifies that the estate conveyed to Martrom D. Lewis is a life estate for and during his natural life. Having carved out and conveyed that life estate he states that the remainder in fee conveyed and intended to be conveyed by the deed to Mary Margaret Lewis is "the full remainder in fee." If that were all the deed provided there would be no need for construction. But it is not all. In the same connection and in the same sentence in which he designates the remainder in fee as the estate conveyed and intended to be conveyed to Mary Margaret he specifically states that it is conveyed to her subject to and upon the "reservations, conditions and limitations hereby (that is, by the deed) created." Thus far in the deed he had not imposed conditions or limitations upon the fee in remainder he was conveying to Mary Margaret but that he intended to do so before

he finished with the subject is apparent. Immediately following the conveyance of the fee in remainder and the description of the lands in which it was created, there follows this clear and positive language, which could refer only to the estate conveyed to Mary Margaret, viz: "Subject to defeasance, however, in the event the said Margaret Lewis shall die before being married, or if she shall marry, die without leaving any children her surviving." The *habendum* is to have and to hold said remainder in fee, subject to Martrom D. Lewis' life estate, to the said *Mary Margaret Lewis* (not to her and her children or to her and her heirs and assigns) "but upon the following conditions and limitations: If she shall have a child or children, then the said remainder in fee shall vest in her and said child or children in equal shares, share and share alike absolutely and in fee simple forever." It is this last quoted clause which furnishes the chief controversy as to the meaning and effect of the deed, of which more hereafter.

It must be noted, however, that the grantor is not yet done with the remainder and the conditions upon which he is conveying it to Mary Margaret. He goes on to provide specifically that if she shall die before marriage or without leaving any child or children surviving her "then she shall enjoy the said estate during her natural life only," and in such event upon the termination of Martrom D. Lewis' life estate and her death the property "shall pass to and vest in fee simple absolutely" in the St. Louis Union Trust Company as trustee for Central College. Again in defining the powers and duties of said trustee the grantor refers to the condition that to take an absolute and indefeasible fee in the remainder Mary Margaret must leave children surviving her. He provides that "as soon as practicable after the death of both the said Martrom D. Lewis and Mary Margaret Lewis, in the event she shall have died without having been married, or having married shall die without leaving any child or children surviving her," the trustee shall sell the property and pay the proceeds to Central College, etc.

Appellants contend that by the words in the *habendum* clause which we have quoted, "if she shall have a child or children then the said remainder in fee shall vest in her and said child or children, in equal shares, share and share alike, absolutely and in fee simple forever," a fee simple absolute vested in Mary Margaret upon her marriage and the birth of issue, that being compliance with the condition, and that "the apparent further limitation 'if she shall die before marriage or without leaving any child or children her surviving'" the property is to go elsewhere, is void for the reason that "the limitation is after the fee simple title had fully vested in Mary Margaret Lewis (now Long) and her two children."

It is not clear whether appellants, by that point in their brief, mean to assert that the fee simple title vested absolutely in Mary Margaret

alone upon the birth of issue to her, or in her and her children. In either event appellants lose sight of the fact that while it has been held that a remainder in fee cannot be limited upon a fee there may be legally created a fee defeasible or determinable upon the happening of a future event with a further valid provision that in such event the fee shall thereupon go to another. [See Lockney v. Campbell (Mo.), 189 S. W. 1174; Brown v. Tuschoff, 235 Mo. 449, 458, 138 S. W. 497; Collier v. Archer, 258 Mo. 383, 167 S. W. 511; Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162; Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471.]

In Collier v. Archer, supra, one Peyton by deed conveyed lands to Moss as trustee to hold for the use and benefit of the grantor's wife during her life and at her death certain shares to go to named grandchildren, with the further provision that if said grandchildren should die without issue then said shares to go to others named. In holding that the grandchildren took an estate in fee subject to be divested upon the happening of the contingency the court referred to Yocum v. Siler, 160 Mo. 181, 61 S. W. 208, and to Gannon v. Albright, and Gannon v. Pauk, supra, in which a similar provision in a will, devising land to testator's two sons by language apt to pass the fee followed by executory devises over in case either or both died without issue, was held to create in the sons defeasible fees. In the two latter cases the questions involved in the construction of the will are discussed at length by the court en banc. As said in the Collier case, "there is no reason why any one should attempt to add to the store of learning embodied in those opinions." In Lockney v. Campbell, supra, a like provision in a will was held to create in the devisee a defeasible fee with limitation over on the condition specified in the will, viz., if the named devisee should die leaving no children.

Appellants cite several cases, of which Papin v. Piednoir, 205 Mo. 521, 104 S. W. 63, and Jackson v. Little, 213 Mo. 589, 112 S. W. 53, are examples, in support of their contention that an attempted limitation over after the grant of a fee is void as being inconsistent with the first gift. In Jackson v. Little, supra, it is said, 213 Mo. 1. c. 598, that when the first devisee has the absolute right to dispose of the property in his own unlimited discretion and not a mere power of appointment among certain specified persons or classes, any estate over is void as being inconsistent with the first gift. And in Gannon v. Albright, supra, 183 Mo. 1. c. 252, 81 S. W. 1162, it was added: "Void as a remainder, because of the preceding fee, after which a remainder cannot be limited. Void as an executory devise, because a valid executory devise cannot subsist under an absolute power of disposition in the first taker," quoting from 4 Kent (14 Ed.) 270, that such attempted limitation over is void as an executory devise "because the limitation is inconsistent with the absolute estate, or power of disposition expressly given or necessarily implied by the

will." But in Gibson v. Gibson, 239 Mo. 490, 505, 144 S. W. 770, it was pointed out that in both Papin v. Piednoir and Jackson v. Little, there was an express power of disposal and further that both cases were opposed to the opinion of the court en banc in Walton v. Drumtra, supra, and the Papin and Jackson cases were disapproved. In Gannon v. Albright, supra, the statement we have quoted was made in the discussion of language used in the will there under review which, *in addition* to the power of disposition *implied* in every grant of a fee. the court thought gave an express power of sale or at least clearly gave such power by implication. Moreover, as further pointed out in Gibson v. Gibson, supra, the court in Gannon v. Albright, in summing up its conclusions, held (183 Mo. l. c. 264) that "said two sons took a fee simple, *subject to be defeated* upon their dying without issue living at their death, and, as both died leaving children, the plaintiffs herein, the contingency upon which their fee simple was to be defeated never happened, and never can happen, and their estate in fee became absolute." (Italics ours.) In Gannon v. Pauk, 183 Mo. 265, 83 S. W. 453, it is said:

"It is not contended by the respondents that the testator intended to give an absolute fee, but the argument is that having granted an estate in fee and conferred with it the power of absolute disposal of the property, an absolute estate was thereby created and the attempted limitation over was void. The legal principle announced in that proposition is correct and the authorities cited by the learned counsel sustain it. 'If, therefore, there be an absolute power of disposition given by the will to the first taker (as if an estate be devised to A in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling or devising the same); in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will.' [4 Kent, Com. (4 Ed.) (14 Ed.?), p. 270; 2 Wash., R. P. (6 Ed.) 667; Yocum v. Siler, 160 Mo. 281; Roth v. Rauschenbusch, 173 Mo. 582.]" [183 Mo. l. c. 270.]

In applying the doctrine to the facts of the case in hand the court pertinently and we think correctly said, l. c. 271:

"Taking the text just quoted wherein the rule is correctly stated, we see that the power of disposition referred to is not that which might be implied as an attribute of the estate granted, but in order to have the effect of cutting off the executory devise, it is a power given by the will in addition to the estate. A power of disposition is implied in every grant of a fee simple, yet the power so implied will not render void an otherwise valid executory devise, but when the

fee is granted and, besides that, the power of disposition is added, then there can be no limitation over.''

The conclusion reached by Division One in Gannon v. Pauk, 183 Mo. 265, as to the construction of the will there involved was disapproved by the court en banc in Gannon v. Albright, supra, and in Gannon v. Pauk, 200 Mo. 75, in both of which the same will was involved, but we do not understand that the above quoted portion relative to the power of disposition necessary to defeat an executory devise over was disapproved or criticised. In the deed here in question we find no language either expressly or by implication giving to Mary Margaret Lewis the power to dispose of the property except of course the power of disposition implied from the mere grant of the fee. That alone is not sufficient to avoid the condition upon which the fee was granted to her and defeat the further conveyance made to take effect upon the happening of the contingency named in the deed.

Appellants urge that by first granting to Mary Margaret Lewis the ''full remainder in fee'' and subsequently in the *habendum* clause providing that ''if she shall have a child or children, then said remainder in fee shall vest in her and said child or children in equal shares, share and share alike absolutely and in fee simple forever,'' the grantor evinced a clear intent to give her the absolute fee upon the sole condition (if any) that she marry and have a child or children; that upon the birth of the first child that condition was fulfilled and the estate conveyed became absolute and indefeasible in her or in her and her children; and that the attempted limitation over in case she died without leaving child or children surviving her is ambiguous and uncertain and in any event is not sufficient to cut down the absolute fee thus granted to a lesser estate. We do not so understand the deed. In the first reference the grantor makes to the estate granted to Mary Margaret he makes it plain that conditions or limitations are to be attached to the grant. Immediately following the description of the property in which the estate is granted he definitely provides that the estate is granted subject to defeasance if she shall die before being married or if she shall marry, die without leaving any children surviving her. Twice thereafter in the deed, once in the *habendum* in immediate connection with the words upon which appellants rely and later in providing for the further disposition of the property in case the condition is not fulfilled he states in positive and unmistakable language the condition that she must leave children surviving her in order for the estate conveyed to her to become absolute. It is impossible to read this deed as a whole and arrive at any conclusion other than that the grantor intended thereby that the property should ultimately go to the St. Louis Union Trust Company as trustee for Central College in the event Mary Margaret should die without leaving children (or descendants, a point to be

noticed later) surviving her. If the further grant in question appeared only by ambiguous or uncertain language or in terms less clear and positive than that relied upon as passing the absolute fee to Mary Margaret Lewis or to her and her children, we would have a different situation with which to deal. But in this case the intent shown by the instrument as a whole seems to us too clear to admit of doubt.

■ In this connection another fact is worthy of note. The instrument of conveyance is a deed, which took effect upon its execution and delivery. At that time Mary Margaret Lewis had no children. Children born to her afterwards could not take a present vested estate under such conveyance. [Kinney v. Matthews, 69 Mo. 520; Mathews v. O'Donnell, 289 Mo. 235, 264, 233 S. W. 451; Tygard v. Hartwell, 204 Mo. 200, 206, 102 S. W. 989.] It is suggested that the deed may be construed to convey the fee to Mary Margaret and her children as a class. Appellants say that while Mary Margaret's children were not born and therefore could not take title when the deed was made "the language of the deed names her children as a class and vests absolutely the title in Mary Margaret Lewis (now Long) and whether she was seized of the fee or a life estate, the estate would open up upon the birth of the children and they, with their mother, became seized of an absolute estate in fee simple;" citing Waddell v. Waddell, 99 Mo. 338, 12 S. W. 349; Rothwell v. Jamison, 147 Mo. 601, 49 S. W. 503; Tindall v. Tindall, 167 Mo. 218, 66 S. W. 1092, and Doerner v. Doerner, 161 Mo. 399, 61 S. W. 801. And they argue further that since there is no provision in the deed for defeasance of the title which would vest in the children upon their birth such title would pass to the mother by inheritance if any child born to her died without issue before her death, which inherited title would not be lost under the defeasance clauses of the deed, wherefore said condition in the deed would become impossible of performance and non-compliance with it would not result in defeasance. The argument is ingenious but we do not find it persuasive. The cases cited hold that a fee may be devised or conveyed to "children" as a class, which fee will vest in those of the class in being when the instrument takes effect and will open up and let in others of the class when they come into being. We have been cited to no case and have found none in which it has been held that a conveyance or devise to a woman and her children, she having none at the time the instrument takes effect, would vest the title in her as representative of a class, to open and let in the children as tenants in common with her if and when they were born. In Hamilton v. Pitcher, 53 Mo. 334, a deed to M. W. P. "and her children" was held to convey the fee to M. W. P. and her children then in being as tenants in common but seemingly the court considered it gave no interest to her children born after the deed was made. But we need not pursue the interest-

ing question thus suggested. In our opinion the clear intent of the deed in question was to give Mary Margaret Lewis not merely a life estate nor the remainder in fee as tenant in common with any children she might thereafter have but to give her the whole remainder in fee subject to defeasance upon the contingency expressed, and that her afterborn children do not take as purchasers or grantees in the deed.

As forecast above, the principal difficulty in determining the correct construction of this deed is the use in the *habendum* clause of the language: "If she shall have a child or children then the said remainder in fee shall vest in her and said child or children," etc. If that sentence be considered alone and given the construction contended for by appellants it is repugnant to the clearly expressed intent and purpose of the deed as shown not only in the preceding premises but immediately following as part of the same condition in the *habendum* and again in the further disposition of the property if Mary Margaret should die leaving no surviving children. It is said in Schee v. Boone, 295 Mo. 212, 222, 243 S. W. 882:

"The will, therefore, should be read as near as may be from the testator's standpoint, giving effect, if possible, to every part and portion of the same; and to the end of carrying out his intention, words may be supplied, omitted or sentences transposed. The exercise of this latitude must be limited strictly to what is clearly necessary to carry out the true intention of the testator. In adding or omitting words or transposing sentences, it must appear from the face of the will that its terms are contradictory or repugnant or that the testator has inadvertently omitted or added certain sentences, which defect destroys his otherwise evident purpose; and it must further appear that a correction of such defect will clearly effectuate the testator's intention."

In Eckle v. Ryland, supra, 256 Mo. l. c. 449, 165 S. W. 1035, it is said that the same rule of construction applies to deeds as to wills. By construing the troublesome sentence in the instant case as intended to mean that the remainder in fee previously granted shall become vested absolutely if Mary Margaret shall have child or children who survive her and as such absolutely vested estate go to her children as her heirs in equal shares we harmonize that part of the deed with other portions and with what seems to us the obvious intent of the grantor. Otherwise that sentence would have to be rejected as inconsistent with and repugnant to other parts of the deed and to the plain intent and purpose of the instrument as a whole. [See Utter v. Sidman, 170 Mo. 284, 299, 70 S. W. 702; Schee v. Boone, supra, 295 Mo. l. c. 229; Clinton County Tr. Co. v. Metzger's Ex., 219 Mo. App. 365, 372, 271 S. W. 1008.]

We think also that the word "children" used in the deed should be construed to mean issue or descendants. In Eckle v. Ryland, supra,

256 Mo. l. c. 448, 165 S. W. 1035, we said, quoting from Waddell v. Waddell, supra:

" 'There is no lack of authority in support of the position that, if the words used in the context warrant it, and such construction will carry into effect the manifest intention that moved the execution of the deed or the signing of the will, then such intention will be made effectual, and the word *heirs* will be construed as meaning *children,* and *vice versa,* and *children* as *issue, grandchildren* or *descendants,* if the justice or reason of the case requires it.''

The excerpt quoted above from Schee v. Boone, expresses the same idea. It is suggested by appellants that Unwin, grantor in the deed, was a "straw man," making the deed at the behest of and upon consideration furnished by Martrom D. Lewis. The evidence does not so show but it does show that Lewis was an active member of and much interested in the church, one of whose institutions was named in the deed as the ultimate grantee if Mary Margaret, his daughter, should die without leaving children. Whether such be the fact or not it requires no stretch of imagination to believe that the purpose of the instrument was to secure the property to Martrom D. Lewis, his daughter and her descendants and to give it to the college only if she should die leaving no descendants. The deed seems to us to indicate such intent. We can perceive no reason why the grantor, or particularly Mr. Lewis if he dictated the terms of the deed as he probably did, should have intended to cut out grandchildren of Mary Margaret if she should have children who predeceased her leaving children. We think this interpretation of the word *children* in the circumstances of this case justified under the rule announced in Eckle v. Ryland and Schee v. Boone, supra, and by Warne v. Sorge, 258 Mo. 162, 167 S. W. 967, where *children* was construed to include grandchildren.

Appellants also urge that the provision "if Mary Margaret Lewis shall die before being married, or if she shall marry, die without leaving any child or children her surviving," has reference to her death prior to that of the life tenant, her father; and they cite cases such as Owens v. Men & Millions Movement, 296 Mo. 110, 246 S. W. 172, and Ewart v. Dalby, 319 Mo. 108, 5 S. W. (2d) 428. In the latter case it was held in effect that where the disposition of the property which is devised over in case of death is preceded by a prior estate for life or years, then the general rule is that the time of death refers to that which occurs during the period of the intervening estate. But such aids to construction must give way to the primary rule that the intent of the grantor is to be gathered from the four corners of the instrument, giving effect if possible to all its language. [Owens v. Men & Millions Movement, supra, 296 Mo. l. c. 119.]

In the instant case it is clear the grantor referred to Mary Margaret's death whenever it might occur and had in mind that it might

and probably would occur after that of the life tenant. In one place in the deed he provides that if she dies before marriage or without leaving child or children surviving her, she shall "enjoy the estate" only during her natural life. She could not "enjoy the estate" during the lifetime of Martrom D. Lewis for during his life the use and enjoyment of the property was expressly given to him. She could only enjoy it after his death. From this provision as well as the whole tenor of the instrument it is clear that the time of death of Mary Margaret Lewis referred to was not intended to mean her death occurring before that of her father.

Space forbids reference to and analysis of all the authorities cited by learned and industrious counsel for appellants. We have given them due consideration. In our opinion the judgment of the circuit court is correct and should be affirmed. It is so ordered. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.