## T. A. WARNE et al., Appellants, v. BERTHA B. SORGE et al.

### Division Two, May 26, 1914.

1. **CONVEYANCES: Life Estate: Remainder to Children.** A deed made in 1861 conveying land to a young man, a son, "for and during his natural life and at his death to the child or children he may leave surviving him and entitled by law to inherit his estate, in such shares or portions as such children would by law take," created a vested remainder in his children and the children of his deceased children living at the time of his death in 1909. The word children is used in a collective sense, and means offspring or issue.

2. ————: **Child: May Mean Grandchild.** The word children of a named person usually refers to his immediate offspring, and not to his grandchildren. But it is sometimes used in a collective sense, and means issue or offspring, and will be so expanded when justice or reason demands.

3. ————: **Construction.** The cardinal rule for construing deeds and wills in Missouri is to ascertain the intention of the parties from all parts of the instrument.

4. ——————: ——————: **Aided by Parol Evidence.** It is not permissible to add to or vary the meaning of written instruments by parol evidence, yet when language is found either in a will or deed that is fairly susceptible of different constructions the court may receive parol or other evidence to ascertain the situation of the parties, for the purpose of ascertaining the meaning of the words used in the instrument.

5. ——————: ——————: ——————: **Discrimination Among Descendants.** Where a mother gave land to her son for life and "at his death to the child or children he may leave surviving him and entitled by law to inherit his estate, in such shares and portions as such children would by law take," the deed being made when he was twenty-four years of age and few if any of his eight children were then born, the natural inference is that she did not intend his children who survived him to take the entire estate to the exclusion of the children of such of them as died prior to his death, but did intend that all of his children would share in the land·alike, and if one of them died then that one's descendants would take his share.

6. ——————: ——————: **Meaning Placed on Deed by Parties to It.** The grantee of a life estate cannot place a construction upon a deed that will bind the remaindermen. But where the deed, made when he was twenty-four years old, conveyed to him a life estate and "at his death to the child or children he may leave surviving him and entitled by law to inherit his estate, in such shares and portions as such children would by law take," the fact that by his own will, made when he was sixty-five years of age, and after eight children were born to him, two of whom died before he made his will, and two others prior to his death, he gave to his children each one dollar without naming them, adding "the home farm being theirs at the time of my death," is persuasive that he understood that the original deed had conveyed the title to all his eight children, and his grandchildren would take the portion of any deceased child, respectively.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J. Williams,* Judge.

AFFIRMED.                                    •

*F. A. Wind* and *L. A. Wind* for appellants.

The deed created a contingent remainder. It is to the child or children surviving the life tenant. Until

termination of the life estate it could not be known who would take the remainder.  Buxton v. Kroeger, 219 Mo. 224.

*Frank Dietrich* for respondents.

(1)  In construction of deeds as well as wills the intention of parties should be considered, especially that of grantor.  13 Cyc. 601; Waddell v. Waddell, 99 Mo. 338; Tindall v. Tindall, 167 Mo. 224.  (2) A resort to extrinsic facts and circumstances may become necessary to ascertain who the grantees are.  13 Cyc. 622. (3)  The law favors vested estates and the rule is that estates shall be held to vest at the earliest possible period unless a contrary intention is clearly manifested in the grant.  Tindall v. Tindall, 167 Mo. 225. (4)  There is no lack of authority that the word "heirs" will be construed as meaning children and vice versa, and children as issue, grandchildren, or descendants, if the justice or reason of the case require it.  Herrington v. Gibson, 22 Ky. L. R. 1486; Butler v. Ralston, 69 Ga. 485; Waddell v. Waddell, 99 Mo. 345; Keeney v. McVoy, 206 Mo. 71.

BROWN, J.—Action to determine the title to real estate and for partition.  From a decree adjudging the defendants to own one-half of the land and directing a sale in partition, the plaintiffs appeal.

The four plaintiffs (appellants) are the surviving children of one Charles G. Warne, who died March 4, 1909.  The defendants are grandchildren of Charles G. Warne, whose parents died prior to the death of said Charles G. Warne, which fact becomes an important item in this cause, as will hereafter appear.

On December 31, 1861, one Timothy B. Edgar held the title to a one-hundred-acre farm situated in Jefferson county, Missouri, as trustee for Mary S. Warne, the mother of the aforesaid Charles G. Warne.

Edgar was duly authorized as such trustees to convey the farm to whomsoever Mary S. Warne, his *cestui que trust*, should in writing direct.

The real dispute between the parties arises over the construction of a deed which Timothy B. Edgar as such trustee for Mary S. Warne executed on December 31, 1861, conveying the one-hundred-acre farm in controversy, which said deed, omitting signatures, description of land and acknowledgments, is as follows:

"This deed, made and entered into this thirty-first day of December, A. D. eighteen hundred and sixty-one, by and between Timothy B. Edgar, trustee, in a certain deed executed by Oscar W. Collet and wife to him as trustee for Mary S. Warne, dated the eleventh day of September, A. D. 1857, the said Timothy B. Edgar, trustee, as aforesaid making this conveyance at the written request of the said Mary S. Warne as is evidenced by her signature hereto, party of the first part, and Charles G. Warne, of Jefferson county, Missouri, party of the second part. Witnesseth, that the said party of the first part in consideration of the said written request of the said Mary G. Warne aforesaid and the sum of ten dollars to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents bargain, sell, convey and confirm unto the said Charles G. Warne for and during his natural life and at his death to the *child or children he may leave surviving him and entitled by law to inherit his estate in such shares or portions as such children would by law take* the following described tract, piece or parcel of land."

(Here follows a description of the one hundred acres in controversy.)

"To have and to hold the same together with all the rights, privileges and appurtenances thereunto belonging or in any wise appertaining unto him, the said Charles G. Warne, for and during his natural life, *and at his death, in fee to such child or children as the*

*said Charles G. Warne may leave surviving him at his
death and in default of any such child or children of
the said Charles G. Warne in being and capable of in-
heriting his estate at his death then the same shall
revert to the said party of the first part as of his first
estate.*

"In witness whereof the said party of the first part
has hereunto set his hand and affixed his seal the day
and year first above written."

It is conceded by all the parties to this action that
the above quoted deed passed a life estate to Charles
G. Warne, the paternal ancestor of the parties to this
action; but the difficulty arises in determining to whom
the title passed when the life estate of said Charles G.
Warne expired. We have italicized those words in the
deed which seem to throw light on the intention of the
grantors.

In the year 1902 Charles G. Warne executed a will
by which he disposed of other real estate to his wife.
Said will contained the following recitals:

"I, Charles G. Warne of the age of sixty-five
years, and being of sound mind and memory, do hereby
make, publish and declare this my last will and testa-
ment in manner following, that is to say:

"I give and devise to each of my children the sum
of one dolar—their interest in the home farm of one
hundred acres in U. S. Survey 416, being theirs at the
time of my death."

In this will Warne did not further refer to his
children or grandchildren. Before Charles G. Warne
made the will above mentioned two of his eight children
had died, leaving issue, and between the date of making
his will and his death two more of his children died,
also leaving issue surviving them.

The defendants, as before stated, are the descend-
ants of the four children who departed this life prior
to the death of their father, Charles G. Warne, and it
is contended by plaintiffs that the trial court erred

in awarding defendants any interest in the farm, because their parents did not survive said Charles G. Warne.

## OPINION.

I. The proper interpretation of the deed from Edgar the trustee and Mary S. Warne to Charles G.

Children: Remainder.

Warne involves a construction of the word "children" as used in this deed, and whether the deed conveyed to the children of Warne a vested or a contingent remainder. If such remainder was contingent and vested only in such of Charles G. Warne's children as were living at the time of his death, then the defendants have no title, and the judgment *nisi* should be reversed.

The word "children" of a named person most usually refers to his immediate offspring, and not to his grandchildren, but said word when used in a collective sense is sometimes applied to grandchildren or other descendants, depending, of course, upon the sense in which it is used. If one speaks of the "children of Israel" he is understood to refer to all the descendants of the patriarch Jacob. The word "children, as well as issue, may stand, in a collective sense, for grandchildren, when the justice or reason of the case demands it." [4 Kent (13 Ed.), p. 451; 13 Cyc. 623.] So, I take it, the word "children" does not have a cast-iron meaning, and, in furtherance of the chief aim of all construction (to ascertain the intention of the parties using the word), it may be expanded when the surrounding facts warrant such construction. Text-writers have announced many rules for construing deeds and wills, but the settled rule in Missouri seems to be that a construction cannot be made to depend upon particular words found in such an instrument, but that all parts of the instrument must be considered together, and the intent of the parties, when as-

certained, is the pole star to guide courts to a correct interpretation. [Utter v. Sidman, 170 Mo. 284, l. c. 294; Tindall v. Tindall, 167 Mo. l. c. 224; Williamson v. Brown, 195 Mo. 313, l. c. 336; Howell v. Sherwood, 242 Mo. l. c. 536.] So, in approaching the solution of the particular dispute at hand, it must be conceded that the word children should be held to include only the immediate offspring of Charles G. Warne, unless there is language in the deed, or something in the situation of the parties who executed it, to warrant such an enlarged meaning of that word as to cover the grandchildren of said Charles G. Warne, whose parents had predeceased him.

While it is not permissible to add to or vary the meaning of written instruments by parol evidence, when language is found in either a will or deed which is fairly susceptible of different constructions courts may receive parol or other evidence to ascertain the situation of the parties for the purpose of determining what is meant by the language used. [Walton v. Drumtra, 152 Mo. l. c. 497; Cross v. Hoch, 149 Mo. 325, l. c. 338; Tisdale v. Prather, 210 Mo. l. c. 408; Cox v. Jones, 229 Mo. l. c. 62.]

Approaching the case with these rules in mind, we observe that the will of Charles G. Warne made in 1902 recites that he was then sixty-five years old, and if that recital is correct he was only twenty-four years of age when the deed was made to him by Edgar the trustee. The further fact that two of his children had died leaving issue as early as 1902, with the recital of his age as sixty-five in the will, raises an inference that the land in controversy was conveyed to him shortly after his marriage, when but few, if any, of his children were born. When we consider the ordinary experience of mankind, it is certainly more reasonable to infer that a man of twenty-four years had no children than to presume that he had eight children at that early age in life. The fact that none of his children are

named in the deed lends further support to this infer-ence.

Mary S. Warne, the mother of Charles G. Warne, joined Edgar, the trustee, in the execution of the deed. Would she desire to discriminate between her grand-children, but few if any of whom were then in exist-ence? Would she desire that such of her sons' children as might outlive the father should take all the farm, and that such of her great-grandchildren as were so unfortunate as to lose their parents before Charles G. Warne's death should be turned out to starve? Mrs. Warne had the clear right to direct how this deed should be made, and I have difficulty in bringing myself to believe that she intended to discriminate among her own descendants before they were born. It certainly would be more in accord with the every-day experience of mankind that she should wish to bestow equal favors upon all her posterity.

Immediately following that clause of the deed directing that the title to the farm should pass to such of the children of Charles G. Warne as should survive him, is a proviso that said children shall take "*in such shares or portions as such children would by law take.*" This last recital evidences a desire that no one of Charles G. Warne's children should be allowed to take more of the farm than another; and, considering the fact that neither Mrs. Warne nor the trustee could foresee which of the children then born, or to be born, would outlive the father, it indicated that neither the trustee nor Mrs. Warne had any preference among the offspring of Charles G. Warne. The *habendum* clause of this deed is practically a repetition of the granting clause, and the word "children" is evidently used in the *habendum* in the same sense it was used in the granting clause.

Another well-known rule for construing instru-ments that are susceptible of more than one meaning is the construction which is placed upon such instru-

ments by the immediate parties thereto.    [Carter v. Foster, 145 Mo. 383; Blumenthal v. Blumenthal, 251 Mo. 693, l. c. 706.]

It is apparent that Charles G. Warne, the ancestor of the parties to this action, understood that the deed of the trustee conveyed a vested remainder to all of his children, because his will, after bequeathing to his children one dollar each without naming them, uses this language: "their interest in the home farm of one hundred acres . . . being theirs at the time of my death." At the time of making this will two of Charles G. Warne's children had already died leaving issue surviving them, and if he had not understood that they held a vested interest in the farm he would not have been likely to have used the language in the will above quoted. So that if we give to this deed the construction which Charles G. Warne placed upon it, the judgment of the trial court ought to be affirmed.

It must be admitted, however, that Charles G. Warne, the grantee of the life estate, could not place a construction upon this deed which would bind his remaindermen. His construction is only persuasive authority, and does not estop the remaindermen from setting up a different estate or title from what he thought they took under the deed. While all this is true, it is well known that many people place a somewhat different shade of meaning upon the same words —Charles G. Warne was likely to understand the language of his mother and the trustee, and the meaning they intended to convey by the words used in the deed, better than others who did not know those parties and who are called upon to construe their language forty or fifty years after the deed was written. For this reason the interpretation which Charles G. Warne placed upon this deed is entitled to some weight.

However, it is strenuously insisted by appellants that the interest of the children of Charles G. Warne under the deed hereinbefore set out was only a contin-

gent remainder, and, therefore, could not pass by descent to the defendants whose parents died prior to their grandfather.

If the deed should be given the construction that appellants contend for their position seems to be sound. There is a great deal of learning on the subject of contingent and vested remainders. The rulings of this court are by no means in harmony upon what constitutes vested remainders. One view of vested remainders is found in the cases of Jones v. Waters, 17 Mo. 587; Waddell v. Waddell, 99 Mo. 338; and Tindall v. Tindall, 167 Mo. 218. A seemingly different view is expressed in the cases of DeLassus v. Gatewood, 71 Mo. 371; Emison v. Whittlesey, 55 Mo. 254; Emmerson v. Hughes, 110 Mo. 627; and Buxton v. Kroeger, 219 Mo. 224 (the last case by a divided court).

Our own decisions seem to leave this point of law somewhat "muddy," but a very lucid and, to my mind, a reasonable definition of vested remainders, is found in the text of 13 Cyc. 647, as follows:

"Where a remainder is limited to take effect in possession, if ever, upon the determination of a particular estate and the latter estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder will be vested in interest as soon as the remainderman is *in esse* and ascertained, provided such remainder depends upon no other event or contingency and nothing but the death of the remainderman before the determination of the particular estate will prevent the remainder from vesting in possession. So a vested remainder exists where property is deeded to a person for life with remainder to another at the death of the one holding the life-interest, as where property is conveyed to one for life with remainder to his children."

When the language of an instrument creates a doubt as to whether it was the intention of the grantor

to convey a contingent or a vested remainder, the doubt should be resolved in favor of the creation of a vested remainder. [Tindall v. Tindall, 167 Mo. 218, l. c. 225.]

While there is substantial authority to support the contention of appellants, after carefully considering the law, the situation of Charles G. Warne at the time the deed was made to him, the strong inference that some and possibly all of his children were then unborn, that the deed itself indicates a desire on the part of the grantors that Warne's children shall inherit the farm in such shares as they "would by law take," which, of course, means in equal shares; and considering the further fact that said Charles G. Warne himself understood the deed to pass a vested remainder to his children, we have reached the conclusion that the learned trial court was correct in holding that the word "children" as used in the deed from Edgar to Warne should be expanded so as to embrace grandchildren of said Warne who were living at the time of his death, and whose immediate parents had predeceased the grandfather. Entertaining these views the judgment will be affirmed. It is so ordered.

*Walker, P. J.,* and *Faris, J.,* concur.