Elward v. Biggs.

No. 25,389.

JOHN ELWARD, *Appellant*, v. (ALICE BIGGS et al., *Appellants*)
JAMES BIGGS, a minor, et al., *Appellees.*

SYLLABUS BY THE COURT.

DEED—*Husband to Wife—Construction of Deed—Life Estate to Wife—Remainder to Children of the Marriage.* A deed from husband to wife examined, and held to convey the property to the wife for her use during her life with remainder to the children of the marriage.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed December 6, 1924. Affirmed.

*Charles C. Calkin,* of Kingman, and *Warren H. White,* of Hutchinson, for the appellants.

*R. C. Davis,* and *A. L. Oswald,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to partition certain real property. The circumstances giving rise to the controversy are as follows:

James Elward and Bridget Elward were husband and wife, and to this union children were born. Each of them had been married before, and each had children by the former union. Some difficulty arose between them, and in adjusting that James Elward executed to his wife the following instrument:

"DEED—GENERAL WARRANTY.

"This indenture, made this 18th day of October, A.D. 1893, between James Elward, of Reno county, in the state of Kansas, of the first part, and Bridget Elward, his wife, of Reno county, in the state of Kansas, of the second part.

"*Witnesseth,* That said party of the first part, in consideration of the sum of one dollar and the further consideration of love and affection and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell and convey unto said party of the second part, her heirs and assigns, all the following described real estate, situated in the county of Reno and state of Kansas, to wit:

"The northwest quarter (¼) of section number twenty-four (24) township number twenty-six (26) range number five (5) west of the 6th P. M. Subject to a certain mortgage of $1,000 which the party of the first part agrees to pay.

"It is agreed by the parties hereto that at the death of the party of the second part the said described real estate shall descend to the children born of the wedlock of the parties hereto, share and share alike. It is further agreed that the party of the second part cannot sell or in any way alienate

15—117 KAN.

the title to said real estate without the consent of the party of the first part, and that said land shall be farmed and occupied by the party of the first part and the product thereof be the joint property of the parties hereto the same as heretofore.

"To have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining forever.

"And said James Elward for himself, his heirs, executors or administrators, does hereby covenant, promise and agree, to and with said party of the second part, that at the delivery of these presents he is lawfully seized, in his own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged and unincumbered of and from all former and other grants, titles, estates, judgments, taxes, assessments and incumbrances, of what nature or kind soever: Except the mortgage above described.

And that he will warrant and forever defend the same unto said party of the second part, her heirs above named and described and assigns, against said party of the first part, his heirs and all and every person or persons whomsoever, lawfully claiming or to claim the same.

"*In Witness Whereof,* The said party of the first part has hereunto set his hand the day and year first above written."

James Elward signed this by his mark, and his signature was attested by two witnesses, was acknowledged before a notary public, and the instrument was filed for record.

James Elward died intestate January 7, 1905, and left surviving him his wife, Bridget Elward, his son, John Elward, and his daughters, Alice Biggs, Hannah Schweitzer, and Dora Biggs, children of his marriage to Bridget Elward. (He also left children by his first wife.)

Dora Biggs died intestate in May, 1920, and left surviving her husband Anthony S. Biggs and three minor children, James, Velma and Francis Biggs.

Bridget Elward died intestate May 26, 1922, leaving children by her marriage to James Elward, a son, John Elward, and daughters, Alice Biggs; Hannah Schweitzer, also grandchildren, being the children of Dora Biggs. (She also left children by her first husband.)

Hannah Schweitzer died in June, 1922, leaving her husband, C. E. Schweitzer, and one minor child, Robert Glenn Schweitzer.

This suit in partition was brought by John Elward as plaintiff, and he named as defendants Alice Biggs, C. E. Schweitzer, and Robert Glenn Schweitzer, a minor, Anthony S. Biggs, and James, Velma and Francis Biggs, minors, and also named as defendants all

the children of James Elward by his first wife and of Bridget Elward by her first husband. The case was tried to the court, who found the interest of the parties to be as follows:

John Elward, one-fourth; Alice Biggs, one-fourth; C. E. Schweitzer and Robert Glenn Schweitzer, each one-eighth; Anthony S. Biggs, one-eighth; and James, Velma and Francis Biggs, each one-twenty-fourth; and that the other defendants had no interest in the property, and rendered decree for partition accordingly.

From this judgment and decree John Elward, Alice Biggs, C. E. Schweitzer and Robert Glenn Schweitzer have appealed. They contend that the property should have been divided into three parts, instead of four, and that Anthony S. Biggs, James, Velma, and Francis Biggs should not have been decreed as having any interest in the property. This is the only question for our determination. None of the children of James Elward by his first wife nor Bridget Elward by her first husband, nor persons who might claim under them, have appealed.

Appellants take the position that upon the death of Bridget Elward the title to the real property vested in the three children of James and Bridget Elward, who were then living under either of two constructions which might be placed upon the instrument: First, if the deed at the time it was executed vested title in Bridget Elward with descent to heirs by procreation, the title would not vest until the death of Bridget, and then only in the special heirs then living. Second, if the deed created a life estate only in Bridget, with remainder over to those who could be ascertained upon the death of Bridget and as of that event, then the title vested only in the children born of the wedlock who were then living at that time.

Neither of these contentions is the correct interpretation of the instrument. The instrument conveys the property to the wife without power in her to sell, but to have the use of it (jointly with the grantor while he lived) during her life, with the remainder in the children of the parties to the instrument. The class of persons in whom that remainder vested was specifically designated and was known at the time the instrument was executed. While it was possible for the number of individuals in that class to be increased by the birth of other children while James Elward and Bridget Elward were both living, it could not be increased after the death of either of them. The individuals constituting the class in whom the title

vested subject to the life use of James and Bridget was definitely known at the time of the death of James Elward. At that time there were four living children of the union of James and Bridget Elward, hence there were four persons who had vested title in the real property in equal shares, subject to the use thereof by Bridget Elward for her life, and upon her death the real property was subject to partition among those four children or their heirs, if any of them were deceased, and this is the division made by the court.

The judgment of the court below is affirmed.