St. Louis Union Trust Company, a Corporation, and Allen C. Orrick, Successor Trustees Under Deed Dated June 12, 1885, of Thomas T. Gantt and David Ranken, Trustees, Plaintiffs-Respondents, v. Charles H. Clarke et al., Defendants-Respondents, Thomas R. Madden, Administrator of the Estate of Hazlett Kyle Campbell, Deceased, Defendant-Appellant.—Nos. 38448, 38449 and 38450.—178 S. W. (2d) 359.

Court en Banc, February 7, 1944.

Rehearing Denied, March 6, 1944.

*Igoe, Carroll, Keefe & Coburn* and *Roberts P. Elam* for appellant.

520

*William M. Fitch, Jessie E Bishop, Clarence J. Neudeck, Jas. A. Henderson, Edwards, Metcalf & Strong, Jones, Hocker, Gladney & Grand, Edw. J. McCarty, Fordyce, White, Mayne, Williams & Hartman* and *N. W. Hartman, G. W. Marsalek* and *Bryan, Williams, Cave & McPheeters* for certain heirs of Hazlett Kyle Campbell, deceased, as shown by the Twenty-fifth paragraph of the Decree and on behalf of other respondents.

528

530

*Leahy & Leahy, Otey McClellan, H. A. Hamilton, Isaac C. Orr, Cox, Blair & Kooreman* and *Richard T. Brownrigg* for respondent Heirs.

*Daniel N. Kirby* and *Harry W. Kroeger* for plaintiffs-respondents, St. Louis Union Trust Company and Allen C. Orrick, Successor Trustees.

*Roy McKittrick,* Attorney General, and *John S. Phillips,* Assistant Attorney General, *amicus curiae.*

TIPTON, J.—This is an action by the St. Louis Union Trust Company and Allen C. Orrick, as successor trustees of the estate of Hazlett Kyle Campbell, deceased, asking the court to instruct them as to their title, powers, and duties in respect to the trust estate, and to construe a deed of settlement of 1877 executed by Robert Campbell and Virginia Campbell, his wife, to Thomas T. Gantt and David Ranken as trustees for Hugh Campbell, Jr., Hazlett K. Campbell, and James A. Campbell; a trustee deed of June 12, 1885, executed by Gantt and Ranken to James Campbell, trustee for Hazlett Campbell; and also, a declaration of trust dated July 6, 1885, involving the same parties. The last two instruments were executed in compliance or attempted compliance with the deed of settlement of 1877. The petition, also, asked the court to determine and declare the validity of these conveyances and the nature of the titles vested in the trustees and the beneficiaries thereunder, and to determine and declare the identity of the person to whom and proportions in which the trust estate is to be distributed. The appellant, Thomas R. Madden, was appointed administrator of the estate of Hazlett Kyle Campbell by the Probate Court of the City of St. Louis.

The various contentions in these appeals primarily involve the construction of the deed of settlement of 1877. This deed may be summarized as follows:

On February 14, 1877, Robert Campbell and Virginia Campbell executed this deed of settlement of 1877 by conveying to Thomas T. Gantt and David Ranken, as parties of the second part, all property belonging to the grantors in trust, and Hugh Campbell, Jr., Hazlett K. Campbell, and James A. Campbell were named as parties of the third part. The conditions of the trust were, first, that the parties of the second part were to hold the property for Robert Campbell for his natural life and to such uses as Robert Campbell may by deed of appointment or will direct (Robert Campbell never exercised such power of appointment); and in default of such appointment, the parties of the second part were to hold the property in the following manner: Some personal property not involved in these appeals was given absolutely to Virginia, and the use of the family residence for her life was also given her; the residue of the property conveyed to the parties of the second part was left in the possession, control, and management of Virginia and Hugh Campbell, Jr., for the common use and benefit of Virginia and Hugh Campbell, Jr., Hazlett K. Campbell, and James A. Campbell, and that Virginia and Hugh

were to act as guardians and curators of Hazlett and James until March 16, 1885. Up to that time, neither Hazlett nor James was to have any power of alienating, encumbering, or charging any share or interest in the estate, "and until that time no interest or estate therein or thereto shall vest in them or either of them." The deed, also, provided that in the event either Hazlett or James married or went into business, Virginia and Hugh at their discretion could advance to Hazlett or James the sum of $25,000 prior to March 16, 1885, and charge interest to that date, (however, neither Hazlett nor James married or went into business) and "if on or before the sixteenth day of March, Eighteen and Eighty-five, no misconduct or irregularity of life should appear in the said Hazlett K. Campbell and James A. Campbell or either of them and no unforeseen misfortune or visitation of Providence which in the judgment of the said Virginia J. Campbell and Hugh Campbell, Jr., (to whom and to the survivor of whom is committed the power of determining and existence of such misconduct, irregularity, unforeseen misfortune, or visitation of Providence) will render it inexpedient to vest in the said Hazlett K. Campbell or James A. Campbell a full share" of the said estate, then Virginia and Hugh shall cause to be divided into four parts, as nearly equal as possible, the property held by the parties of the second part and it shall be awarded by lot. "And thereupon the said parties of the second part . . . shall execute fit deeds conveying to the said Virginia J., Hugh, Hazlett K., and James A. Campbell, respectively, in fee simple absolute the shares and parts to them respectively awarded." But if "Virginia J. Campbell and Hugh Campbell, Jr., or the survivor of them shall be of opinion that in contemplation of misconduct or irregularity of life on the part of the said Hazlett K. Campbell and James A. Campbell or either of them, or in view of unforeseen misfortune or visitation of Providence occurring to them or either of them . . . it is inexpedient that an equal fourth part of said real and personal estate should be conveyed to and vest in the said Hazlett K. Campbell and James A. Campbell, or either of them, then the said Virginia J. Campbell and Hugh Campbell, Jr., or the survivor of them shall by deed direct and appoint in what manner degree and terms the one equal fourth part of said real and personal estate shall be by conveyance and assignment of the said parties of the second part vested in the said Hazlett K. Campbell and James A. Campbell or either of them directly," and the same powers were given as to the remainder in reference to their families. The deed then directs that the parties of the second part shall by deed and assignment complete whatever disposition, settlement, and limitation Virginia and Hugh or the survivor of them may by deed declare in respect of the mode, degree, terms, and trust in which Hazlett and James shall take respectively the one equal fourth part of the real estate. The making of the deeds and convey-

ances contemplated by the provisions of this deed on March 16, 1885, shall be on their part a full performance of the trust in them hereby reposed and vested. In the event of the death of Hazlett, James, or Hugh unmarried and intestate prior to March 16, 1885, the share of the such deceased shall be added to the share of the survivors. "But the said Virginia J. Campbell may at any time by deed or will dispose of her share, being one equal undivided fourth part of said real and personal Estate and a like power is also given to the said Hugh Campbell, Jr., and no such power of alienation or encumbrance shall exist in the said Hazlett K. Campbell and James A. Campbell until the sixteenth day of March in the year Eighteen hundred and Eighty-five (1885) nor then except as to the estate or interest to them directly conveyed as herein before provided." The deed then provided that "The net income as may be needed for the maintenance, support, and education of the said Hazlett K. Campbell and James A. Campbell and the keeping up of the establishment and homestead of the said Virginia J. Campbell as to her shall seem meet and expedient and if there be a residue of income not needed for these purposes, that the said Virginia J. Campbell and Hugh Campbell, Jr., shall according to their best judgment invest the same for the common benefit of themselves and the said Hazlett K. Campbell and James A. Campbell."

When the deed of settlement was executed, Robert Campbell's family consisted of his wife, Virginia, and his three sons, Hugh, Jr., Hazlett K., and James A. At this time, Robert was seventy-three years old and died about two years later; his wife, Virginia, was about fifty-four years old and she died on January 30, 1882, without having by deed or will disposed of any of her interest in the property affected by the trust under the deed of settlement of 1877; Hugh, Jr., was about twenty-nine years old and he died on August 9, 1931, without having married; Hazlett K. was about nineteen years old and died on March 27, 1938, without having married; and James was about seventeen years old and died on July 13, 1890, without having married.

March 16, 1885, having arrived and passed, Hugh Campbell, Jr., as survivor of the power granted to Virginia and Hugh, Jr., by the deed of settlement of 1877, caused the property constituting the Robert Campbell Trust to be divided into three equal parts and one such part of such property was allotted to each Hugh, Hazlett, and James. By deeds dated June 12, 1885, the trustees, Gantt and Ranken, conveyed the shares of real estate so allotted to Hugh and James directly. Because Hugh was of the opinion that, in the contemplation of the "unforeseen misfortune and visitation of Providence" which had occurred to Hazlett, it was inexpedient that his share should be conveyed to him directly, Gantt and Ranken conveyed by deed Hazlett's share in the real estate to James, as trustee, for the use and benefit of Hazlett, and, upon Hazlett's death, the remainder to the

heirs of said Hazlett as the same may exist by law at the time of his death. The deed contained provisions for the application of the income for the maintenance and support of Hazlett "to the most liberal degree," during his lifetime; provisions for conveyance to Hazlett in fee simple if, in the opinion of the trustee, Hazlett recovered from his then existing ailment; and, also, provisions for the application of the income to the support of both Hazlett and his family, if he should have one. Hugh joined the trustees in the execution of this deed and in the same instrument James accepted the trusteeship. After the death of James in 1890, Hugh was appointed successor trustee of the trust estate of Hazlett, and he administered the property until 1926 when he resigned; then the St. Louis Union Trust Company and Allen C. Orrick were appointed successor trustees of this estate. When Hugh died in 1931, he left. a will devising his property in trust for the benefit of Hazlett, which provided that the net income was to apply for the "liberal maintenance" of Hazlett and upon the death of Hazlett, the residue was to be paid over to Yale University.

On September 8, 1931, Hazlett was adjudged of unsound mind by the Probate Court of the City of St. Louis. There was evidence to the effect that he was of unsound mind prior to the year 1885. There were no debts left unpaid by Hazlett at his death in 1938, as the executor or administrators pendente lite of Hugh's estate paid a federal income assessment assessed against Hazlett and, also, his funeral expenses.

It is the contention of the appellant, Madden, that a proper construction of the deed of settlement of 1885 would give at least an equitable fee in Hazlett and, therefore, there would be both a Federal and State inheritance tax due, and it is his duty to pay the same as administrator.

Briefly, the trial court found the persons who were the heirs-at-law of Hazlett and the respective share of each heir. There is no issue on this appeal regarding who were his heirs or their respective shares. The court, also, found that Virginia took only a contingent interest in the property conveyed by the deed of settlement, one-fourth of which would vest in her if she were alive on March 16, 1885, but since she died in the year 1882 without having exercised the power of appointment by deed or will in this one-fourth interest, her interest in this property lapsed on her death and the trust property was properly divided into three equal parts in 1885 instead of four equal parts. The court, also, found that the one-third share of the property conveyed by the deed of settlement of 1877 and allotted to Hazlett was subject to the terms and provisions of the trust deed of 1885 and the declaration of trust of July 6, 1885, and that the conveyance of Hazlett's allotted share to a trustee for Hazlett's support and maintenance during his life, with the remainder over to Hazlett's

heirs upon his death pursuant to the deed of 1885, was within the intent, meaning, and effect of the deed of settlement of 1877, and, therefore, valid; that the only persons having any interest in the property were Hazlett's heirs-at-law who took by purchase as remaindermen under the deed of 1885, and not by descent from him; and that none of the property in the hands of respondent trustees constituted an asset of Hazlett's estate, so as to be subject to any claim by his administrator.

On August 6, 1941, the court made a supplemental order approving the accounts of the respondent trustees and made allowance for compensation to them up to the date of said decree and, among other things, it was held that they were trustees of a "trust created by the deed dated June 12, 1885, of Thomas T. Gantt and David Ranken, trustees," allowing the respondent trustees gross compensation of $135,738.78, as such trustees. The appellant has, also, taken an appeal from this order.

On August 22, 1941, the trial court entered an order of partial distribution; that is, the order directed the respondent trustees to distribute to the heirs of Hazlett the sum of $540,000. From this order the appellant, also, appealed.

We do not understand that there is any dispute as to the legal effect of the deed and declaration of trust of 1885. These instruments gave legal title to the trustees, and the beneficial interest to Hazlett for maintenance for life, with the remainder to his heirs who took as purchasers and not by descent from him. But appellant contends that under the deed of settlement of 1877, the trustees did not have the power to execute the kind of deed that they did execute in 1885 and since Virginia died before 1885, that Hazlett inherited from her one-third of the one-fourth of the property conveyed to her by the deed of settlement of 1877, on the theory that her one-fourth was deeded to her in fee. In other words, the rights of the parties to this appeal are to be determined by the construction of the deed of settlement of 1877.

 It is well settled in this state that the rule to be observed in the construction of deeds is to ascertain the intention of the grantor, and to give effect to such intention, unless it conflicts with some positive rule of law. It is necessary to take the deed as a whole in arriving at such intention and not to give any clause in the deed undue preference. It is our duty in construing the deed to so construe it as to carry out the intention of the makers. We, therefore, look to the deed of settlement of 1877 to find the grantors' (Robert Campbell's and Virginia J. Campbell's) meaning and intention as therein expressed. Eckle v. Ryland, 256 Mo. 424, 165 S. W. 1035; Welch v. Harvey, 281 Mo. 684, 219 S. W. 897; McAlister v. Pritchard, 287 Mo. 494, 230 S. W. 66; Long v. St. Louis Union Trust Co., 332 Mo. 288, 57 S. W. (2d) 1071; Triplett v. Triplett, 332 Mo. 870, 60 S. W.

(2d) 13; Krause v. Jeannette Investment Co., 333 Mo. 509, 62 S. W. (2d) 890. ¡Also, "where two clauses are inconsistent, the paramount rule is that the deed must be construed so as to give effect to the intention of the parties as collected from the whole instrument. The primary or dominant intent expressed in the instrument, when ascertained, will control." 16 Amer. Jur., Sec. 173, p. 536; Petty v. Griffith, 165 S. W. (2d) 412.

Looking at the deed of settlement of 1877 as a whole, the primary or dominant intent as expressed by that deed is the support, maintenance, and education of Robert Campbell's family as a unit from a common fund until March 16, 1885, the date that the youngest son, James, becomes twenty-five years old. And then, at that date, to divide the property conveyed by this deed equally in fee among the members of his family, which, at the date of the deed consisted of his wife, Virginia, and his three sons, Hugh, Hazlett, and James, unless an unforeseen misfortune or visitation of Providence had happened to Hazlett or James. If such misfortune or visitation of Providence had happened to Hazlett and James, or either one, then their, or his, share was to be conveyed in the manner, degree and term that Hugh, as survivor of Virginia and Hugh, should by deed direct.

The appellant contends Virginia had a fee simple interest in an equal one-fourth of the property conveyed by the deed of settlement of 1877 upon the execution of that deed, subject to be divested by the exercise of the power of appointment reserved in Robert, and if not then, it vested in her upon Robert's death in default of his exercise of that power, and upon her death, her equal one-fourth interest descended to her three sons, Hugh, Hazlett, and James. Also, the share inherited from her by Hazlett was never divested out of him.

By the deed of settlement of 1877, certain property was conveyed absolutely to Virginia, none of which is involved in the appeal. The clauses dealing with the property conveyed to her that is involved in this appeal are summarized as follows: The residue of the property conveyed to the trustees should be held ". . . in possession, control, and management of said Virginia J. and Hugh Campbell, Jr., to be managed, controlled, and administered for the common use and benefit of the said Virginia J. Campbell and her children Hugh Campbell, Jr., Hazlett K. Campbell, and James A. Campbell . . . until the sixteenth day of March, in the year Eighteen hundred and eighty-five (1885) . . . ." At that time, the trustees were to convey to her an equal one-fourth of the property held by them. The deed, also, provided that ". . . the said Virginia J. Campbell may at any time by deed or will dispose of her share, being one equal undivided fourth part of said real and personal estate, and a like power is also given to the said Hugh Campbell, Jr." The deed further provided that "if there be a residue of income not

needed for the purposes . . . (that is, the support and maintenance of Virginia and the three sons) that the said Virginia J. Campbell and Hugh Campbell, Jr., shall, according to their best judgment, invest the same for the common benefit of themselves and the said Hazlett K. Campbell and James A. Campbell.''

Considering the deed of settlement of 1877 as a whole, and particularly the clauses dealing with Virginia's interests conveyed by this deed, we are of the opinion that Virginia had only a beneficial interest in this trust estate for her support and maintenance, because she died before March 16, 1885. In the first place, the title to the trust estate was vested in the trustees, Gantt and Ranken. It was an active trust because after the allotment of the respective shares of Virginia, Hugh, Hazlett, and James, the trustees shall execute fit deeds conveying the shares so allotted to them. These trustees had the power to convey or lease the real property by deeds prior to the time of the division of this property, upon the written request of Virginia and Hugh. Scott on Trusts, Vol. 1, page 417; Perry on Trusts and Trustees, Vol. 1, pages 535-538; Walton v. Drumtra, 152 Mo. 489, 54 S. W. 233; Simpson v. Erisner, 155 Mo. 157, 55 S. W. 1029. It was not until March 16, 1885, that the trustees were to convey to Virginia her one-fourth equal part of this property. That contingency never happened as she died in 1882. Moreover, she did not have the right to one-fourth of the income of the trust estate for her support and maintenance because that income was to be used for the *common use and benefit* of Virginia and her three sons. The deed, also, provided that if there was a surplus from the income not needed for the maintenance of Virginia and her sons, such surplus shall be invested for the *common benefit* of Virginia and her sons. If Virginia had a vested interest in this property at her death, would she not have had the right to one-fourth of the income of the trust estate? Under any circumstances, would she not have a right to one-fourth of the surplus of the income not needed for the support of Robert Campbell's family?

We think these questions are answered by the case of Gifford v. Thorn, 9 New Jersey Equity 702, 1. c. 708, where the court said: ''But in the present instance there is no severance of the legacy from the rest of the estate, and no appropriation of the interest to the separate benefit of the legatee; on the contrary, the whole estate, real and personal, is vested in the hands of the trustees, who are to receive the entire interest, rents, and profits for the general purposes of the will. The legatee is to receive not the interest of the residuary legacy, but a maintenance and education from the general fund, in common with the other children of Jane Mary Thorn. Such a disposition of the estate can raise no presumption of an intention on the part of the testator that the legacy should vest immediately.''

Under the deed of settlement of 1877, there was no separation of the income so as to give Virginia one-fourth of the income; she was not even given the one-fourth of the surplus of the income. There was no estate to vest in her until the year 1885. Her interest in the fee was contingent upon her living until that date.

This was the construction that Gantt and Ranken, Hugh Campbell, Jr., and James Campbell put upon the deed of settlement of 1877 as evidenced by the deed of June 12, 1885, and the declaration of trust dated July 6, 1885. It is to be remembered that Gantt and Ranken were parties of the second part of this deed and Hugh and James were parties of the third part of this deed. Keller v. Keller, 343 Mo. 815, 123 S. W. (2d) 113. In Warne v. Sorge, 258 Mo. 162, l. c. 170, 167 S. W. 967, l. c. 969, it was held that the life tenant, Chas. G. Warne, could not place upon the deed there under consideration a construction which would bind the remaindermen but the court said, ''While all this is true, it is well known that many people place a somewhat different shade of meaning upon the same words—Charles G. Warne was likely to understand the language of his mother and the trustee, and the meaning they intended to convey by the words used in the deed, better than others who did not know those parties, and who are called upon to construe their language forty to fifty years after ▮▮▮ the deed was written. For this reason, the interpretation which Charles G. Warne placed upon this deed is entitled to some weight.''

While it is not controlling, the construction placed upon the deed of settlement of 1877 in 1885 by the trustees and two beneficiaries is entitled to some weight. They knew the meaning of words used by the grantors better than people who are called upon to construe these words sixty years later.

To construe the deed of settlement of 1877 as giving Virginia a vested estate prior to 1885, would give Hazlett a vested interest in part of this trust property prior to 1885. Such a construction would be contrary to the express language in the deed. The deed says ''. . . and until that time (March 16, 1885) no interest or estate therein or thereto shall vest in them or either of them.'' (That is, Hazlett or James.) Again the deed reads, ''No such power of alienation or encumbrance shall exist in the said Hazlett or James . . . '' until the 16th day of March, 1885.

Virginia was a grantor in the deed of settlement of 1877 and not one of the named beneficiaries. That fact is to be given some consideration in construing this deed, for the reason that the rule is well settled that in the construction of instruments creating trusts, all intendments of instruments creating trusts are in favor of the beneficiary of the trust and against the settlor. 65 C. J. 499, Sec. 243; Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1116.

■ For these reasons, and for the further reason that we have already found the dominant intent, as expressed by the deed of settlement of 1877, was that the family was to be treated as a unit and was to be supported and maintained from a common fund until 1885, we conclude that Virginia did not have a vested interest in the property at the time of her death, and the part of the deed that says, "But the said Virginia J. Campbell may at any time by deed or will dispose of her share, being one equal undivided fourth part of said real and personal estate," was a mere power of appointment that was never exercised.

■ It is a well-settled principle of law that a power of disposition may be coupled with a life estate or an interest for years, but if not exercised, it leaves both the life estate and the remainder unaffected. If this is exercised, it cuts off the remainder. Grace v. Perry, 197 Mo. 550, 95 S. W. 875; Krause v. Jeannette Investment Co., supra; Coleman v. Haworth, 320 Mo. 852, 8 S. W. (2d) 931; Keller v. Keller, supra.

. It is significant that under the deed of settlement of 1877, Robert Campbell reserved a life estate with, also; the power of disposition of the remainder either by deed or will, which power he never exercised, yet the appellant does not contend that he held a fee simple estate at his death in 1879.

To sustain his position, appellant relies strongly upon Chapman v. Chapman, 336 Mo. 98, 77 S. W. (2d) 87. In that case, two beneficiaries were given "the sole use and exclusive benefit and disposal" of the property "share and share alike." No words were contained in the deed of settlement of 1877 which conferred upon Virginia at any time prior to her death the "sole use" and "exclusive benefit" of a one-fourth share in the corpus of the trust estate or even a one-fourth share in its income. The case of Green v. Sutton, 50 Mo. 186, is similar to the Chapman case. We think that both of these cases are not in point.

We, therefore, hold that Virginia had no vested interest in the property at the time of her death, and that this property was properly allotted in three parts in 1885.

■ Appellant next contends that upon the division and allotment of the trust property, Hazlett acquired a vested fee in an equal fourth part of the Robert Campbell Trust property under the deed of settlement of 1877, subject only to the powers committed to Hugh by that deed. He contends the powers vested in Hugh had only the effect of cutting down the dominion of Hazlett over the management, control, and disposition of his share during his lifetime, or for such time that he should remain incapable of managing his property.

The deed of settlement of 1877 contemplated that when March 16, 1885, had arrived, the following steps were to be taken: (1) a division of the property into parts; (2) an allotment of the parts; (3) a determination of inexpediency; and (4) the conveyance.

The appellant contends that when this property was divided into shares and a share was allotted to each beneficiary, the share became his own, and, therefore, a fee was vested in each beneficiary. In other words, when the property was divided into shares, and Hazlett's share was allotted to him, he became vested with the fee, subject to Hugh's power to determine the expediency of a direct conveyance to Hazlett. The question arises as to what kind of a conveyance the trustees should make in conveying Hazlett's share.

There can be no doubt that if Hugh had determined it was expedient to convey to Hazlett, the trustees must convey to him an absolute fee of this share of the trust estate; but Hugh made no such finding. On the contrary, he determined, as he was directed by the deed of settlement of 1877, that an unforeseen misfortune or a visitation of Providence had occurred.

As we view the deed of settlement of 1877, the steps taken in 1885, pursuant to that deed, were not independent of each other but were interrelated; that is, the interest passing to Hazlett by virtue of the allotment might be qualified by the determination of Hugh made in the exercise of his powers. Of course, Hugh had only such powers as were conferred upon him by the deed of settlement of 1877.

Prior to the division of 1885, Hazlett had no vested interest in the trust property, only the right for his support and education. The deed says, "until that time no interest or estate therein or thereto shall vest in" Hazlett. This deed, also, says no "power of alienation or encumbrance shall exist in the said Hazlett . . . until the sixteenth of March in the year Eighteen hundred and eighty-five (1885) *nor then except as to the estate or interest to them directly conveyed as hereinbefore provided.*" (Italics ours.)

Since Hazlett's estate or interest in the trust property was to be determined by the conveyance after the allotment, it follows that appellant's contention that Hazlett was entitled to a fee on the allotment of the shares is unsound.

The phrase "hereinbefore provided" quoted above refers to the power vested in Hugh, as survivor of Virginia and Hugh, to determine the expediency or inexpediency of conveying Hazlett's share to him directly.

 Since Hugh determined that it was inexpedient for Hazlett's share to be conveyed to him directly, we must look to the deed of settlement of 1877 and to the language dealing with that power and the power of the trustees, Gantt and Ranken, in making the conveyance. It is as follows:

"But these presents are upon this further trust that if the said Virginia J. Campbell and Hugh Campbell, Jr., or the survivor of them shall be of opinion that in contemplation of misconduct or irregularity of life on the part of the said Hazlett K. Campbell and James A. Campbell or either of them, or in view of unforeseen mis-

fortune or visitation of Providence occurring to them or either of them (none of which things are regarded as in any way probable, but the purpose of this deed is to provide as far as possible against contingencies of unlikely event) it is inexpedient that an equal fourth part of said real and personal estate should be conveyed to and vest in the said Hazlett K. Campbell ·and James A. Campbell, or either of them then the said Virginia J. Campbell and Hugh Campbell, Jr., or the survivor of them shall by deed direct and appoint in what manner degree and terms the one equal fourth part of said real and personal estate shall be by conveyance and assignment of the said parties of the second part vested in the said Hazlett K. Campbell and James A. Campbell or either of them directly and in what manner degree and terms the remainder of the said equal fourth part of said real and personal estate shall be by said parties of the second part conveyed and assigned for the support and maintenance of the families of the said Hazlett K. Campbell or James A. Campbell respectively. And the said parties of the second part shall by deed and assignment effectuate and complete whatever disposition settlement and limitation the said Virginia J. Campbell and Hugh Campbell or the survivor of them may by· deed declare in respect of the mode degree terms and trusts in which the said Hazlett K. Campbell and James A. Campbell shall take respectively the one equal fourth part of the said Real and personal estate and the mode manner and degree upon or in which the residue thereof not by them respectively directly taken shall be conveyed to the use of their families respectively.''

The above language is entirely devoid of words evincing an intent that Hazlett, if denied the right to receive the fee, was, nevertheless, to possess an equitable title in fee. The power given to Hugh to determine in what ''manner degree and terms'' the property might be vested in Hazlett necessarily meant that Hugh had the power to prevent or qualify the vesting, and, therefore, was inconsistent with the theory that Hazlett was vested with an equitable fee. Hugh, also, had the power, not only the power but the duty, to provide for the support of Hazlett's family if he had one. This is inconsistent with an equitable fee in Hazlett. The deed of settlement of ,1877, also, gave the power to declare the ''limitations'' affecting Hazlett's share. We have already said that there was no vesting of any kind in Hazlett upon the allotment of his share, but only upon conveyance as to the ''mode, degree, terms, and trusts'' in accordance with Hugh's directions to the trustees, and those directions did not give Hazlett a fee. Hazlett had no power of ''alienation or encumbrance'' unless Hugh directed the trustees to make such a conveyance of his share. This he did not do. It, therefore, follows that Hazlett did not have a fee or equitable fee in the share allotted to him.

 Appellant contends that even though Hazlett did not have a vested equitable fee, there was a reversion in fee simple of the

trust property of Robert and Virginia Campbell here in controversy which upon their deaths passed in equal shares to Hugh, Hazlett, and James, so that one-third of such reversionary property became vested in Hazlett and passed in intestate succession from him to his heirs.

We find nothing in the deed of settlement of 1877 that would show any intention to retain a reversionary interest in the property, but on the contrary, the deed shows that it was their intention to pass all their interest in this property. The deed of settlement of 1877 provides that ". . . all the property of whatsoever kind and description whether real person or mixed and wheresoever being to the parties of the first part or either of them belonging together with all the appurtenances thereof To have and To hold to the parties of the second part. . . ." (Gantt and Ranken.) This deed further provided, "And the making by the said parties of the second part of the deeds and conveyances contemplated by the provisions of this instrument in the various events herein ascertained and provided for, on or about the Sixteenth day of March in the year Eighteen hundred and eighty-five shall be on their part a full performance of the trust in them hereby reposed and vested."

The first quoted clause clearly shows that Robert and Virginia conveyed all their interest in this trust property. The second quoted clause shows that there was to be no title left in Gantt and Ranken when they executed the conveyances in 1885. There was no language in the deed that would indicate that Robert and Virginia intended to retain a reversion. Moreover, we must not overlook Section 3496, R. S. Mo. 1939, which says ". . . and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant."

We think the provisions of the conveyance of 1885 which limited the remainder upon the death of Hazlett to his heirs, was sanctioned by the deed of settlement of 1877. We have already held that Hazlett's "share" was not a vested share, but the word "share" as used in this deed was used in the sense to distinguish from the share of the other two sons, Hugh and James, and to be exclusively devoted to the benefit of Hazlett to the extent that Hugh, the trustee whom he appointed, and his successors, should deem advisable.

Since Hazlett had no family, his death ended the entire interest directly conveyed out of his share and the remainder conveyed by the trustees to the heirs of Hazlett was the only conveyance in remainder that was consistent with the express intent of Robert and Virginia, so that the trustees had no alternative open to them except the conveyance of the remainder to the heirs of Hazlett pursuant to their power expressly given by the deed of settlement of 1877, to dispose of the entire title.

We, therefore, hold that the conveyance of 1885 conformed to the provisions of the deed of settlement of 1877, and that the appellant has no interest in the property in question.

It, therefore, follows that the appellant cannot question on this appeal of the supplemental order approving the successor trustees' settlement and their commission or the supplemental order of partial distribution.

It follows that the judgment should be affirmed, and the appeals from the two supplemental orders dismissed. It is so ordered. All concur.