No. 36,262

J. W. BENNETT, *Appellant,* v. L. G. HUMPHREYS et al., *Appellees.*

(155 P. 2d 431)

Opinion filed January 27, 1945.

*Harry C. Blaker,* of Pleasanton, argued the cause for the appellant.
*W. W. Edeburn,* of La Cygne, was on briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: This was an action to quiet title to real estate. The defendants prevailed and the plaintiff appeals. The issue turns on construction of a deed.

Isaac Bennett was an early settler in Linn county. He and his wife homesteaded a quarter section of land and continued to make it their home until their death. In 1928, being advanced in years, they decided to convey the land to their two children—a son, John Bell Bennett, and a daughter, Lillie Bennett Epperson. Two conveyances, identical in terms except as to the land description and the stated consideration, were executed. Under one deed the north eighty—or an interest in it—went to the daughter for a stated consideration of thirty-two hundred dollars. Under the other deed the south eighty—or an interest in it—went to the son, John Bell Bennett, for a stated consideration of six thousand dollars. The latter deed is the one here involved.

Before proceeding with recital of facts we think it will promote clarity to note the provisions of the deed which give rise to this controversy. Omitting formal parts, the pertinent portions were as follows:

"Said parties of the first part (Isaac Bennett and wife) in consideration of the sum of Six Thousand and no/100 Dollars to them paid by said party of the second part the receipt whereof is hereby acknowledged, do by these presents, grant, bargain and sell and convey and confirm unto said party of the second part (John Bell Bennett), his heirs and assigns, all of the following described Lots, tracts or parcels of land (description follows).

*"It is part of consideration of this deed that John Bell Bennett cannot sell this property during his life time and at his death is to be divided equally among his children.*

To have and to hold . . . unto his heirs and assigns forever." (Italics supplied.)

When the deed was given in 1928 John Bell and his wife Belle, and their granddaughter, Alice Irene, were living on the place, together with his father and mother. They had had two children— a son, J. W., and a daughter, Leliah Maude. The son J. W. was then grown and living elsewhere. The daughter, Leliah Maude Bennett Jarred, had died in 1917, while living on the place with her parents and grandparents. Alice Irene, her daughter, was less than a year old when her mother died. After her mother's death she continued to live with her grandparents and great grandparents and was more than eleven years old when the deed was executed.

After executing the deed in 1928 Isaac Bennett and his wife, together with his son, John Bell, his wife and granddaughter, continued to live on the homestead. When the father, Isaac, died he was well along in his nineties. His wife had predeceased him. John Bell and family continued living on the place until his death on January 28, 1944, between four and five years after the death of his father. When John Bell's parents moved onto the place in an early day he was seven years old. He had lived all of his life there with the exception of a year or two. There he had brought his bride, and there his two children were born.

John Bell Bennett died intestate, leaving as his heirs at law the widow, Belle Bennett, the son, J. W. Bennett, and the granddaughter, then Alice Irene West. A short time thereafter the instant action was brought by the son, J. W. Bennett, to quiet title to the south eighty, as against his mother, Belle Bennett, and his niece, Alice Irene West. There were other defendants who need not be noted here as their interests, if any, are not involved in this appeal. The primary issue, joined by appropriate pleadings, related to the nature of the title which passed under the deed. The plaintiff contended that his father, the grantee, got a life estate only and that upon his father's death the fee title passed to him as a remainderman. Defendants, Belle Bennett, the widow, and Alice Irene West, the granddaughter, contended that the provision of the deed, shown in italics, *supra,* was void; that fee title had passed to the grantee and upon his death, intestate, title would descend to the heirs.

Trial was had, and after overruling demurrers to the answers and receiving testimony offered by the plaintiff, the trial court made findings of fact—which are not challenged—and conclusions of law favorable to the defendants. The trial court had also submitted a memorandum opinion, when overruling the demurrer. The sub-

stance of the court's conclusions of law was that the provision that the grantee "cannot sell this property during his lifetime" was repugnant to the granting and the habendum clauses and void as a restriction upon alienation; that the word "children" as used in the clause "at his death is to be divided equally among his children" was equivalent, as used, to the word "heirs," and that therefore the grantee got a fee title. Judgment was entered giving the three heirs, as tenants in common, undivided interests as follows: one-half to the widow, Belle Bennett, and one-fourth each to the son, J. W. Bennett, and the granddaughter, Alice Irene West. This appeal followed.

Two primary questions are here presented. First, did the grantee get fee title or a life estate; second, if he got a life estate only who took title upon his death?

The general rule, especially under modern decisions both in this state and elsewhere, is that in construing deeds as well as wills the intention of the grantor is the cardinal consideration, and that intention is to be gathered from examination of the instrument as a whole. (18 C. J. 252; 26 C. J. S. 324 *et seq.;* 16 Am Jur. 529, 531, 532, 570; *Palmer v. Blodgett,* 60 Kan. 712, 57 Pac. 947; *Vawter v. Newman,* 74 Kan. 290, 86 Pac. 135; *Kendall v. Parsons,* 81 Kan. 192, 105 Pac. 25; *Dyson v. Bux,* 84 Kan. 596, 114 Pac. 1092; *Abbott v. Perkins,* 90 Kan. 45, 49, 132 Pac. 1177.) And many cases hold that where the words are not entirely clear surrounding circumstances may be considered in determining intention. (18 C. J. 260, 261; 26 C. J. S. 344; 16 Am. Jur. 532; *Vawter v. Newman,* supra; *Abbott v. Perkins,* supra, p. 49).

In line with the general rule our statute relating to conveyance of real estate (G. S. 1935, 67-202) provides that the grantor's entire title and interest will pass unless it clearly appears that he intended a lesser estate to pass.

Although the grantor, in the instant deed, used the words "heirs and assigns" in the granting and in the *habendum* clauses we have no hesitancy in saying that by the paragraph of limitation (italics, *supra*) he clearly indicated his intention that his son John Bell Bennett was to get a life estate only. Taking the paragraph as a whole we think it is not susceptible of any other interpretation. When the father provided that the son could not sell the property during his lifetime and that upon his death it should go to his children, and that this limitation was imposed as "part of the consideration of this deed" he indicated beyond all question a life-estate only in the

son. It is true that he did not use the specific words "life-estate" or "for and during his natural life," but no particular words are necessary to creation of a life-estate. Such an estate may be created by any words clearly indicating the intention. (26 C. J. S. 403.) Some cases hold that an unqualified grant to the first taker will give him only a life-estate when there is a limitation over upon his death. (26 C. J. S. 404; *Elward v. Biggs,* 117 Kan. 225, 230 Pac. 808; *Gentle v. Frederick,* 234 Ala. 184, 174 So. 606, syl. ¶ 5.)

If the provisions of the deed itself left any doubt—and we entertain none—as to the grantor's intention to convey a life-estate only to the son—there are attending circumstances as found by the trial court which would fortify our conclusion. The trial court found (finding No. 11) that although the deed recites a consideration of six thousand dollars "no consideration was paid by John Bell Bennett to his father or mother for the real estate conveyed" (16 Am. Jur. 561); that "John Bell Bennett had not done well financially and in 1925 had been a voluntary bankrupt and had lost a tract of land which he had previously purchased, and was at the time of the execution of the deed residing upon the real estate deeded to him" (finding No. 6); and that "The grantor, Isaac Bennett, and his wife, continued to make this real estate their permanent residence until the time of their death," and that "He furnished at least a part of the money to pay the taxes upon the real estate during his lifetime." (Finding 7.)

Appellee cites and stresses cases which hold that limitations of power of alienation which are repugnant to the grant are void, unless there is prescribed in the instrument some enforceable result or consequence for a breach of the restriction. (*Wright v. Jenks,* 124 Kan. 604, 261 Pac. 840; *Somers v. O'Brien,* 129 Kan. 24, 28, 281 Pac. 888, and others.) That rule is well established, but is inapplicable here. Here the words of restriction were clearly used with the intention of conveying a life estate, and were followed by clear limitation over to "children" upon death of the holder of the life interest. Restriction upon alienation is repugnant to a conveyance of a fee title. It is also inappropriate to the creation of an estate tail for the reason that a normal incident of title in fee tail is that entailment may be cut off by intermediate conveyance. But restriction upon alienation is not necessarily repugnant to conveyance of a life estate. Indeed, as pointed out in *Brown v. Boone,* 129 Kan. 786, 284 Pac. 436, words such as "without power of alienation" often serve to de-

fine the nature of the grantee's interest and are frequently used in the creation of life estates.

Having held that the provision against alienation was void as being repugnant to the grant, the trial court then gave consideration to the word "children" as used at the end of the same sentence and apparently took the view that it was synonymous with the word "heirs," citing in support *Brown v. Boone,* supra. We cannot agree with that view. It is well established that unless the context requires a different construction the word "children" is a word of purchase and not a word of limitation. It is used to indicate those who are to take, and not to fix the nature of the title or interest passing under the conveyance. (26 C. J. S. 423, 424; 16 Am. Jur. 581; 11 C. J. 753 *et seq.*; 12 L. R. A., n. s., 283.)

Obviously the word "heirs" is ordinarily a much more comprehensive word than the word "children." We understand *Brown v. Boone,* supra, to be in line with the general rule rather than as treating the two words as synonymous. It was there said (p. 788.) "The words 'heirs' and 'heirs of the body' are peculiarly words of limitation. The word 'children' is just as peculiarly a word of purchase." And even if the word "children" as used in this deed be treated as equivalent to "heirs of the body" so as to create a fee tail estate, it would not be helpful to the interest of the grantee's widow since there was no conveyance by the grantee during his lifetime which would cut off the entailment and result in descent to his lawful heirs upon his death.

Having concluded that the grantee, John Bell Bennett, took a life-estate only, we pass to the question of limitation over upon his death. The provision of the deed was that upon his death the property was "to be divided equally among his children." Appellant says that inasmuch as he was the only child living at the time of the death of his father, the grantee, he is the sole remainderman and as such is entitled to the property. This construction would cut out Alice Irene, granddaughter of the grantee, whose mother, daughter of the grantee, had died many years prior thereto.

The word "children" is not ordinarily construed to include "grandchildren." (11 C. J. 753; 26 C. J. S. 350.) The cases are legion, however, where "grandchildren" have been held to be included in the word "children" when the context, or the surrounding facts and circumstances, in case of ambiguity, make it clear that the grantor or testator so intended. (11 C. J. 754; note 12; 18 C. J. 274; 26

C. J. S. 351; 104 A. L. R. 289 *et seq.; In re Blodgett's Will*, 294 N. Y. S. 358, 366; *Bowker v. Bowker*, 148 Mass. 198, 203, 19 N. E. 213; *Warne v. Sorge*, 258 Mo. 162, 167 *et seq.* 167 S. W. 967; *Koenig v. Koenig*, 92 Kan. 761, 770, 142 Pac. 261.) In the annotation in 104 A. L. R., *supra*, it is said that if there appears to be a doubt or uncertainty as to intention there is a presumption against disinheritance of a grandchild whose parent is dead. (See cases there cited; also *Bowker v. Bowker*, supra, and cases cited, p. 203.)

In the instant case both the terms of the deed itself indicate and attendant facts and circumstances convince us that the grantor intended to include the grandchild within the term "children." First, note the circumstances under which the deed was given. Grantor and grantee, father and son, had long been living upon the homestead together with their families. There the grantee's daughter, Leliah Maude, was born, there she came after her marriage, there she died in 1917. When she died she left a baby less than a year old. In its finding of fact No. 9—a finding not questioned here—the trial court found:

"The family on the homestead at the time of the execution of the deed in question consisted of the grantor, Isaac Bennett and his wife, Susan Lee Bennett; John Bell Bennett and his wife, Belle Bennett; and *the granddaughter, Alice Irene West, who was reared in the home of John Bell Bennett, as one of his children.* The plaintiff, J. W. Bennett, was a mature man and residing on other real estate in the vicinity and was not a member of the family residing upon the land." (Italics supplied.)

When Isaac Bennett executed the deed in 1928, being then around eighty years of age, his son John Bell and wife, Belle, were well along in middle life. We are told that at the time of the trial Belle Bennett was seventy-seven years old. Accordingly she was past sixty years old when the deed was executed. Could anyone reasonably believe that when the father made the deed he would have in mind children yet to be born to her? And yet, although the grantee then had only one living child—J. W. Bennett, then a mature man living elsewhere—Isaac provided in the deed that upon the death of the grantee the property should go to his *"children"* and "be equally divided" among them. As the grandchild had lived with her grandparents since her birth and after her mother died when she was much less than a year old had been reared as their own child, there is only one reasonable construction and that is that the grantor intended to include her in the word "children."

Together with many cases noted in our own research we have

carefully examined all the cases—and with special care the Kansas cases—to which counsel have called our attention. Reference has been made herein to a number of them. It would serve no helpful purpose to comment upon the others. Suffice it to say that while there may be some conflict of authority we find nothing in any of them disturbing to the conclusions reached upon the facts in this case.

It follows from what has been said that as far as rights under the instant deed are concerned the grantee, John Bell Bennett, took a life estate, and upon his death all right, title and interest in the property therein described passed in equal parts to J. W. Bennett and Alice Irene West, as remaindermen.

The judgment is reversed with directions to enter judgment in harmony with this opinion.

BURCH, J., not participating.